GALEN EASTMAN,

*v.*

THOMAS BROWN.

1.  NEW TRIAL — *finding against the evidence.*  Where a cause was tried before the court, without a jury, upon questions of fraud and want of consideration, the Supreme Court will not disturb the finding below upon the facts, without the strongest reasons.

2.  FRAUD — *who can take advantage of it.*  *Semble,* where a sale of property is .made by an agent, the transaction being entirely fair as regards the purchaser, the latter can take no advantage of any fraud which may have been committed by the agent against his principal.*

3.  CONSIDERATION — *what is sufficient.*  Where an agent is permitted to retain for himself all. he may obtain beyond a stipulated sum for property sold for his principal, and, upon making the sale, joins the purchaser in an obligation to secure

---

* See *Merryman* v. *David*, 31 Ill. 404.

the principal in the purchase-money, and also makes a chattel mortgage on his own property for the same purpose, he may take a note in his own name and for his own benefit, from the purchaser, for the excess which he was allowed to retain, and there will be a sufficient consideration in the property sold and in the risk he incurred in becoming security to support it.

APPEAL from the Superior Court of Chicago. This was an action of assumpsit, instituted in the court below, by Thomas Brown, against Galen Eastman, upon a promissory note executed by the latter to the former, on the 3d of November, 1860, for the sum of $750, payable on the 1st of July following.

The defendant pleaded: 1. The general issue; 2. That the note was obtained by the fraud of the plaintiff; and 3. Want of consideration. The issues were tried by the court, without the intervention of a jury.

It appears that in 1860, Mathias Teetzel and Brown, the plaintiff, were the joint owners of the propeller J. Barber. Teetzel testified that, being desirous of selling his interest in the boat, he called upon Eastman, the defendant, about the 1st of October, 1860, and offered to sell it to him for $500 in cash, and the payment, by Eastman, of certain liabilities held against him for the purchase-money of the boat, being one-half of a note for $500, and another note for $3,000, making in all $3,750 as the price for his half interest. Eastman deferred the matter until he could see if Brown, the joint owner with Teetzel, was willing.

Some time after that, Teetzel saw Brown at St. Joseph, Mich., where the former resided. Brown asked him if he wished to sell his interest in the boat; Teetzel replied he did, and told him of the offer he had made Eastman. Brown then asked him if he would give him all he could make over the $500 if he would make the sale for him. Teetzel replied he would, that all he wanted was the $500, and be released from his liability for the purchase-money before spoken of. Brown then returned to Chicago with the boat, of which he was in command, when he met Merrill, who was the agent of Eastman, and told him that Teetzel would sell his half interest in the boat for $4,500, and

not a cent less; but it seems Brown did not have the authority of Teetzel to say this. However, Merrill informed Eastman that Teetzel had raised the price of his interest in the boat to $4,500, as Brown told him, and Eastman told him to close the trade.

Thereupon Brown and Merrill, for their respective principals, executed the following instrument:

CHICAGO, *October 23d,* 1860.

This is to certify that I have this day sold to Galen Eastman half the propeller J. Barber, with all her furniture and tackle, for $500 cash; $250 to pay half of note due this fall, and also to assume the note given by Teetzel & Brown to Lind & Slater, $3,000, due in the fall of 1861, and to pay to Mathias Teetzel $750, during the next season of navigation, as may be agreed, making in all $4,500, for the one-half of said propeller; and I, Galen Eastman, agree to pay the money as aforesaid, and to assume the said payments.

THOS. BROWN, *as Agent for Mr. Teetzel.*
GALEN EASTMAN, *per B. Merrill.*

On the 29th of October, Brown saw Teetzel again and handed him the $500 which Eastman had sent him, and at the same time Teetzel made out and handed to Brown the following proposition:

ST. JOSEPH, Mich., *Oct.* 29, 1860.

I will sell my half of the propeller J. Barber, on the conditions as follows: 1st. That I am entirely released from the payments yet to be made on the boat, viz.: a note for $500 and interest, due in December, 1860, signed by Brown & Teetzel; and that the party cause the release of a mortgage given by me as collateral to said notes. Then, after the above conditions are fully complied with, the party is to pay me in hand $500 in cash. In case the notes and mortgage cannot be released, I will accept the following securities, viz.: payment of the $500 note and interest, and a bond of indemnity, signed by all parties interested in said boat, and a mortgage on the same, conditioned that if the $3,000 note and interest is not paid at maturity, all parties whatever having any interest in said boat, are to forfeit all right, title and interest in the same, and they are to bind

themselves to deliver the boat to me for sale, to meet the $3,000 note. I am also to have the boat for one more trip to this place. M. TEETZEL.

This instrument was put in an envelope by Teetzel, directed to Eastman, and handed to Brown, who did not then disclose to Teetzel that he and Merrill, as agent of Eastman, had executed the paper before mentioned, showing the sale. Teetzel became aware of its existence, however, before the trade was finally consummated between him and Eastman.

The written proposition made by Teetzel was intended to authorize Brown to sell to any person, though he expected Eastman would be the purchaser if he should comply with its terms.

About the 1st of November, Teetzel, Brown, Eastman and Merrill met at Slater's office, in Chicago, where the trade was consummated. Teetzel transferred his half interest in the boat to Eastman; Eastman and Brown gave Teetzel a bond to indemnify him against the $3,000 note, and also a chattel mortgage on the whole boat for the same purpose. The $500 note against Teetzel had already been taken up by Eastman. When Eastman handed these papers to Teetzel, he also gave him the written proposition which Teetzel had given to Brown. While the trade was thus being finally closed, Eastman and Merrill both understood they were paying $4,500 for the purchase, and Teetzel and Slater both testify that they also knew that $750 of that amount was not to go to Teetzel; and after the trade was closed, Eastman remarked to Brown, "will it make any difference, as we are in a hurry, whether I make that note now or at some other time," or, "won't it do just as well to make that note some other time when you come in?" Brown replied it would make no difference. Teetzel understood this to have reference to the $750 note, and it was his understanding when he closed the trade with Eastman, that Brown had made $750 in the operation.

Murphy testified that he called on Eastman to obtain payment of this note some four or six weeks after it became due. Eastman then said he had a large payment to make on the boat,

which he should make before he paid that note, but said it was all right.

The court below found the issues for the plaintiff and assessed his damages at $805. A motion for a new trial was denied and judgment entered upon the finding. The defendant thereupon took this appeal, and assigns for error that the finding was contrary to the evidence.

Messrs. WALKER & THOMAS, for the appellant.

Messrs. BURNHAM & MARTIN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit brought in the Superior Court of Chicago, upon a promissory note, and tried by the court without a jury on the general issue, and fraud and want of consideration. The issues were found for the plaintiff, and judgment rendered for the amount of the note and interest, from which this appeal is taken. There is no question of law raised on the record, the only question presented being on the facts, and they having been thoroughly examined and considered by the court below, on a question of fraud and want of consideration, we would not, without the strongest reasons, interfere with the finding of that court.

From a close examination of the evidence in the record we can discover no fraud perpetrated by the appellee against the appellant, however much he may have committed as against Teetzel, the joint owner with him of the boat. It will be observed that the appellee had undertaken to bargain and sell Teetzel's interest in this boat to the appellant for the sum of four thousand five hundred dollars, and had closed it, except making out the papers and receiving the cash payment. Six days before, Teetzel wrote the paper signed by him and called exhibit A. That bears date October 29. The sale to appellant by appellee was made on the 23d, as appears by exhibit B, and by which appellant was bound in law. Here was a complete bargain made without any misrepresentations at that time. It was not until six days thereafter that Teetzel made

8

a general offer, not to appellant alone, but to all the public, that he would take a less sum. The bargain was closed between appellant and appellee long before, and appellee was authorized by Teetzel to sell and retain all he could get for the vessel over and above three thousand seven hundred and fifty dollars. It appears, from Teetzel's testimony, that appellant knew appellee was making seven hundred and fifty dollars, the amount of the note sued on, when the business was closed up at Slater's office. Appellee signed a bond of indemnity with appellant, and joined appellant in chattel mortgage on the vessel, all which he was under no obligation to do. And at the very time of this closing of the bargain, the appellant inquired of appellee, if it would make any difference, as 'the parties were in a hurry, whether he made "that note" then or at some other time, to which appellee replied it would make no difference. It is a most violent presumption that "that note" is the one sued on, as it bears date two days after the consummation of the sale in Slater's office. Again, it is clearly shown, by Slater's testimony, that the appellant knew appellee was making the amount of this note in the sale. Again, when called upon for payment, some weeks after it was due, in July, 1861, he made no objection to the justice of the claim, said it was all right, but being pressed by a large payment he had to make on the vessel, he could not then pay it, but would pay it when he was in funds.

It is evident appellant has received all he contracted for, and at the price, including this note, he voluntarily agreed to give, and no ground appears on which to base either of the special pleas. No fraud is shown in procuring the note, and the consideration for it is found in the vessel, and the risk appellee ran in joining in an indemnity bond, and giving a chattel mortgage on his interest in the vessel to secure Teetzel. It is very clear, after paying this note, appellant will have paid no more for the vessel than he knowingly and fairly contracted to pay.

The judgment must be affirmed.

*Judgment affirmed.*