J. D. OGILVIE

*v.*

JOSHUA COPELAND.

*Filed at Mt. Vernon, April 4, 1893.*

1.  BOUNDARIES—*of sections and subdivisions—monuments.*    The stat-
ute of the United States, when the public lands were surveyed, provided,
that when the exterior lines of the townships which may be surveyed
into sections, or half sections, exceed, or do not extend six miles,

the excess or deficiency shall be specially noted and added to or deducted from the western and northern ranges of sections or half sections in such townships according as the error may be in running the lines from east to west or from north to south. The sections and half sections bounded on the north or western lines of such townships shall be sold as containing only the quantity expressed in the returns and plats respectively, and all others as containing the complete legal quantity. This statute applies to the subdivision of fractional townships as well as to others.

2. The statute of the United States requires that the boundary lines actually run and marked in the surveys returned shall be established as the boundary lines of the sections or subdivisions for which they were intended, and that the length of the lines as returned shall be held as the true length thereof. It also requires that the corners marked in the surveys returned shall be established as the proper corner of sections, or subdivisions of sections, which they were intended to represent. And when the measurement of the line as returned does not agree with the distance between the corners thus established, between which it is assumed to be the measurement, it must be disregarded, for monuments control as to the corners and distances.

3. SAME—*U. S. field-notes and plats presumed to be correct.* The field-notes and plat of the survey of the public lands are presumed to be correct until the contrary is shown, and they are important evidence in ascertaining where monuments were located; but if the location of the monuments is clearly shown by other evidence to be at a distance different from that given in the field-notes and plat, the latter must give way.

4. SAME—*lost corners—how found.* When the corners of land are lost a survey from the north to the south, as the original surveys were made, is the better course to find the location of such corners; but if they are found, it is of no consequence in what direction the lines between them are run, as such corners must control as to courses and distances.

5. EJECTMENT—*judgment against defendant for land not claimed by him.* In ejectment to establish a boundary line between two tracts of land, in which the general issue and a special plea denying possession, properly verified, was filed, the court trying the case without a jury found and established the boundary line, but rendered judgment against the defendant for the whole tract, including land in the possession of the plaintiff. *Held*, that the finding as to the boundary line was proper, but that it was erroneous in finding the defendant guilty of withholding possession of that part to which the defendant had no claim or possession. In such case the judgment will be reversed and the cause remanded, with directions to the trial court to render judgmant only for the part of the land shown to have been in the defendant's possession.

6. When the defendant in ejectment disclaims possession of the tract of land described in the declaration, by plea verified as required by section 22, chapter 45, of the statutes, the burden of proof is shifted to the plaintiff to establish possession by the defendant; and the plaintiff will be entitled to recover only such part of the premises described as he shows the defendant to be in the possession of. It will be error to render judgment for the part not shown to have been in the defendant's possession. .

7. SAME—*of the judgment.* A judgment in ejectment will be good, nothwithstanding it may contain some matter having no place in an ejectment suit, if it contains a finding that the defendant is guilty of withholding a part only of the premises described.

8. APPEALS AND WRITS OF ERROR—*presumptions will be in support of the judgment.* Where the question of fact as well as of law is submitted to the court, the judgment will not be disturbed, unless it shall appear to be clearly against the weight of the evidence.

WRIT OF ERROR to the Circuit Court of Massac County; the Hon. R. W. McCARTNEY, Judge, presiding.

Messrs. COURTNEY & HELM, for the plaintiff in error:

The field-notes and plat of original survey are the primary and best evidence of boundary. U. S. Statute, Sec. 2396; Tiedeman on Real Estate, Sec. 832.

The universal rule in ascertaining boundary, is that natural objects always prevail over artificial, even when artificial objects are visible and existing. *Brown* v. *Huger,* 21 How. 305; *Newsom* v. *Prior,* 7 Wheat. 7; *Fisher* v. *Bennehoff,* 121 Ill. 433.

And *a fortiori* this is true when the natural objects are sustained both by quantity, course and distance, as given in the field-notes. *Higginbotham* v. *Stoddard,* 72 N. Y. 94. And so, if the fixed monuments are repugnant to one another, then course and distance will prevail. *Townsend* v. *Hoyt,* 51 N. Y. 656. And if no fixed and visible objects appear in the immediate vicinity, the boundary is to be ascertained by the nearest fixed and visible objects on the same line, together with quantity, course and distances. *Drew* v. *Swift,* 46 N. Y. 204. It is the probable continuing monuments that control. *Miller* v. *Beeler,* 25 Ill. 167

Those that are prominent, certain and permanent, such that attract attention and that parties are not liable to be mistaken about. *Cox* v. *Freedly*, 33 Penn. St. 124. And those that are most certain should be taken before those less certain. *Dol.* v. *Thompson*, 5 Cow. 371; Tyler on Ejectment and Adverse Enjoyment, 569. Thus a river would be the highest evidence of boundary. *Jackson* v. *Camp*, 1 Cow. 605. For it could not be supposed that a surveyor would make a mistake regarding a certain prominent point, such as a river. *Newsom* v. *Prior, supra*. And for this reason artificial marks on trees yield to natural monuments. *Bottom* v. *Lane*, 16 Texas; *Ferris* v. *Coover*, 10 Cal. 629; *Fisher* v. *Bennehoff*, 121 Ill. 433; *Baldwin* v. *Brown*, 16 N. Y. 359.

The field-notes are the natural, visible monuments in this survey, are the life of our cause, the strength of our argument. Artificial marks on trees, courses and distance, all yield to the visible, natural monuments. *Brown* v. *Huger*, 21 How. 305; *Fisher* v. *Bennehoff*, 121 Ill. 433.

Rivers, creeks and other water courses are natural monuments. *Yates* v. *Van De Boygert*, 36 N. Y. 530; 1 Waite's Actions and Defenses, 714.

Where there are now visible monuments, the evidence of an interested party as to marks on trees will not prevail over course and distances as given in the field-notes. *Bruckner* v. *Lawrence*, 1 Doug. (Mich.) 19.

Admitting, for the sake of the argument, that there is a deficiency in this section, the loss is not to be taken from the north half of the section alone. Each subdivision of the section bears its proportion of the deficiency. The law is well settled that where there is a deficiency in a section, the half-mile corner shall be placed equidistant between the section corners on the same line. U. S. Statute, Sec. 2396; *Walter* v. *Commons*, 2 Port. (Ala.) 38; *Nalen* v. *Palmer*, 24 Ala. 391; *Jones* v. *Kimble*, 19 Wis. 429.

To the same effect, *Francois* v. *Maloney*, 56 Ill. 399.

The court overlooks a statutory provision. The decision in this case is in the teeth of the fifth clause of section 30, chapter 45, page 613, Revised Statutes of Illinois. The cases of *Whitford* v. *Drexel*, 118 Ill. 600, and *City of St. Louis* v. *Hackett*, 85 id. 382, have been overruled without being referred to. The opinion is also in conflict with the well considered case of *McArthur* v. *Porter*, 6 Pet. 205.

Messrs. GREEN & GILBERT, for the defendant in error:

"It will be perceived that all the section corners are established on lines running north, and these, as well as the quarter section corners on these lines are established permanently in the first instance." *Gummer's Surveying*, Sec. 10, p. 274.

"It will also be seen that all excess or deficiency of measurement is thus thrown into the north half of sections on the north, and the west half of the section on the west, of townships." *Idem*, p. 275.

"As the land was originally owned and surveyed by the United States, and conveyed by the corners thus established, it is of the first importance to find these corners before any divisions are attempted." *Idem*, Sec. 12, p. 276.

"Section and quarter section corners in the north and south lines are to be renewed in the same manner by starting at some corner on these lines, and running past the missing corners until some reliable corner is found, then establishing the missing corner in a straight line and at its proper distance." *Idem*, Sec. 16, p. 277.

"Experience shows that the quarter section corners on the north and south of sections required to be made on corrected lines are much more frequently out of place than those on the east and west made on the first line run; consequently, as it is desirable to carry errors in the establishment of original corners no farther than possible, sections should be divided by a straight line between the quarter section corners on the east and west. These errors thus

never pass the center of the section." *Idem,* Sec. 17, p. 278.

"A township line is not necessarily straight in all cases; a deflected line, if established by satisfactory evidence, will be adopted by the court as the true line originally run by the government surveyor." *McClintock* v. *Rogers,* 11 Ill. 279.

"This great disparity in quantity is sufficient, at least, to excite a strong suspicion that the original corner was not placed in a direct line between the two extremes of the township line." *Idem,* on p. 300.

"Marked lines and corners control courses and distances. Surplus lands do not vitiate a survey, nor does a deficiency of acres called for in a survey operate against it. Whenever the boundaries can be established, they must prevail." *Robinson* v. *Moore,* 4 McLean (U. S. C. C.), 279; *Morrow* v. *Whitney,* 5 Otto, 551.

"The boundary line is to be ascertained by running direct lines from one monument to the other." *Melcher* v. *Merryman,* 4 Me. 601.

"Whenever it can be proved that the line was actually run, and the corners made, the parties claiming under the deed will hold accordingly, although there is a mistake in the description in the deed." *Cherry* v. *Slade,* 3 Murph. (N. C.) 82.

Mr. Justice Scholfield delivered the opinion of the Court:

Joshua Copeland brought ejectment in the Massac Circuit Court against James B. Ogilvie, for the southwest quarter of the northwest quarter of section four, in township fifteen south, range three east, of the third principal meridian. The pleas were the general issue and a special plea denying that the defendant was in possession of the property described in the declaration, verified by affidavit. By agreement of the parties, the trial was before the court without the inter-

vention of a jury. The judgment was for the plaintiff, and the defendant brings the case to this court by writ of error.

No questions of law were raised by written propositions presented to the court upon the trial, to be "held" or "refused," and the only questions of law discussed in the printed argument, filed with the record, for our consideration, relate to the respective probative force of the different classes of evidence produced upon the trial and preserved in the record. The appellee owns the southwest quarter of the northwest quarter, and the appellant owns the northwest quarter of the northwest quarter of section four, in township fifteen south, range three east of the third principal meridian. Appellee claims that appellant's possession extends south of the line dividing these tracts, and appellant denies this, and insists that his possession is not beyond the boundaries of his tract. Appellee concedes if appellant owns forty acres, as is assumed to be conveyed by the patent of the United States under which he deraigns title, his possession does not extend beyond its boundaries: but appellee contends that the section is fractional, and that, consequently, the northwest quarter is so much less than a full quarter section that, when it is properly divided, the line dividing the northwest quarter of the northwest quarter and the southwest quarter of the northwest quarter is north of the south line of appellant's possession; and so, while the immediate question to be decided is, only, where is the line dividing these tracts, the decision of that question involves the determination of the primary questions, is section four fractional, and if so, where are the boundary lines of the northwest quarter. There is no disagreement between the parties except as to the length of the north and south lines of the quarters. Appellant contends that they are forty chains in length, while appellee contends, and the court below found, that their length is only twenty chains and fifty-two links.

It was, at a very early period, held by this court, that when, as in this case, the question of fact as well as of law is submitted to the court, the judgment will not be disturbed, unless it shall appear to be clearly against the weight of the evidence; and this has been constantly adhered to through a long line of decisions, a few of which only need be referred to. *Eldredge* v. *Huntington*, 2 Scam. 535; *Eastman* v. *Brown*, 32 Ill. 53; *Bowen* v. *Dutton*, 27 id. 515; *Demoss* v. *Hannaman*, 46 id. 185; *Smith* v. *Brown*, id. 186; *Thompson* v. *Anthony*, 48 id. 468.

It can, therefore, be pertinent here only to ascertain whether the judgment below is clearly against the weight of the evidence; and, in determining this, we shall content ourselves with merely stating the tendency of the evidence, and the conclusions which, in our opinion, we should draw from it.

The government field-notes give the distances from the northwest corner of section four south, to the quarter corner on the west line of the section, at forty chains, and from that corner to the southwest corner of the section forty chains; but evidence was given, on behalf of appellee, tending to show that the monument made by the government survey- ors when surveying the section, at the quarter corner on the west side of the section, was only twenty chains and fifty- two links. If that is the fact, then so much of the field-notes as assume to express the length of this line and the govern- ment plat of the survey is inaccurate. The field-notes and plat are assumed to be correct, until the contrary is shown, and they are important evidence in ascertaining where monuments are located; but if the location of the monu- ment is clearly shown by other evidence to be at a distance different than that given in the field-notes and plat, they must give way.

The government survey of this tract was made in Decem- ber, 1806, and, necessarily, many changes have since oc- curred, making it difficult to retrace the lines then run.

Appellee introduced three experienced surveyors, Johnson, Morton and McCormick—the first of whom was educated as a civil engineer, and was a practical surveyor of many years' experience, and had, in previous years, filled the office of county surveyor of Massac county; the second was a practical surveyor, and also in previous years had filled the office of county surveyor of Massac county; and the third was, also, a practical surveyor, and is the present county surveyor of Pope county; and they each say, with positiveness, that, in their opinion, the monument fixed by the government surveyors for the quarter corner on the line of section four is only twenty chains and fifty-two links south of the northwest corner of that section; and appellee testified that that had been recognized by the parties owning the land in that vicinity as the government quarter corner on that line for thirty-six years.

Johnson, Morton and McCormick testify to corners which they found as the southeast corner of section four, which is the same as the southwest corner of section three, the southeast corner of section one, which is also the northeast corner of section twelve, and other corners, showing that the line on the south of the north tier of sections is a straight line due east and west, or sufficiently approximating a straight line, to be styled such in general language. They, also, show that a line forty chains north of the southeast corner of section four reaches a point directly east of what they denominate the quarter corner on the north and south line on the west side of the section. It seems to be agreed that the north and south line on the east line of section one is full, and that the quarter corner on that line is equidistant from the north and south corners, at a point identified by the calls of the government field-notes. Johnson and Morton testify that a line drawn due west from that corner strikes what they identify as the government quarter corner on the west line of section four, and the same line extended a mile west to the west line of section five

strikes what they say is a government quarter corner on that line.

These men ought to know, and it is fair to presume that they do know, whether the witness trees, or other evidences of the location of a government corner, called for by the field-notes of the government surveyors, are found at the corners about which they testify.

Appellant also introduced on his behalf three experienced surveyors—Wise, a practical surveyor, at present county surveyor of Johnson county; Mathis, also a practical surveyor, and at present county surveyor of Pulaski County; and Giltner, also a practical surveyor, and at present county surveyor of Massac county, and they each gave testimony disagreeing with that given by Johnson, Morton and McCormick. They began at the northwest corner of section four, and ran south, as indicated by the field-notes, forty chains for the quarter corners of the section, and then forty chains further south for the southwest corner of the section. They found nothing indicating the location of the quarter corner at the point forty chains south of the northwest corner of the section, and while they found a scar upon a tree near what they call the southwest corner of the section, they found no positive or conclusive tests that a government corner had been established at or near that point; and the conclusive circumstance with them to thus locate corners is the points are at the respective distances at which the field-notes call for corners. A circumstance of some weight against the correctness of their locations of these corners is that the field-notes call for two streams of water as being crossed by the south boundary line of section four—the first at the distance of eleven chains and eighty-one links east of the southwest corner, and of the width of eighteen links; and the second at the distance of thirty-three chains and fifty links east of the southwest corner, and of the width of six links. But the evidence is that the line described by these surveyors as the south

boundary line of section four crosses but one stream of water, while that described by the other surveyors crosses two streams, substantially as called for by the field-notes.

The surveyors testifying in behalf of appellee locate the southwest corner of section nine, which is the southern terminus of the line, beginning at the northwest corner of section four, and running thence south between sections four and five and eight and nine, at a point near a fourth of a mile from the Ohio river; but the government field-notes call for that corner at a stake on the bank of the Ohio river, and it is contended the line, as run by the surveyors testifying on behalf of appellant, agrees with the government survey in that respect. But counsel for appellee answer this by saying the line as run and described by Wise, Mathis and Giltner, runs under the bank of the Ohio river, and there terminates. Whereas, the field-notes call for the bank of the Ohio river at a point from which, "a white oak, 10 inches in diameter, bears S. 32½, E. 4 links, and a white oak, 9 inches in diameter, bears N. 60, E. 58 links," which is not now and never was descriptive of the point at which the line of Wise, Mathis and Giltner terminates. The point at which Johnson, Martin and McCormick found to be the southwest corner of section nine, Martin testifies was pointed out to him a good many years ago, when he was running lines in that vicinity, by the owners of the adjacent tracts of land, as the southwest corner of the section, and he found what was then pointed out to him as having been the location of the witness trees—they being then removed—to correspond as to relative course and distance with the calls of the field-notes for the witness trees of that corner. And it is shown that a bayou extends to within a short distance of this point, and that when affected with floods it extends to within some forty or fifty yards of the claimed corner. There is a sort of ridge or backbone, however, between the claimed corner and the bayou, which it is not probable was different when the government survey was made from

what it is now. It is difficult to comprehend why this point should then have been thought to be the bank of the Ohio river, and if there was substantial correspondence with the field-notes in all of the other north and south lines in this section, and evidence of the present or former existence of white oak trees at the distance from the river bank called for by the field-notes, we should feel that appellant is far more likely to be right in his contention as to the location of this corner than is appellee; but there is not that correspondence with the field-notes in all the other north and south lines, for we have the testimony of Mathis that the line between sections fourteen and fifteen falls six chains short of the length called for by the government field-notes, and there is no evidence that either now or in former days, there are, or were, white oaks on the bank of the Ohio river, where this line, if extended, would strike it, within or reasonably near the distance as called for by the field-notes.

A very strong, if not conclusive, circumstance against the contention of appellant is this: The east line of section one, being the range line, is full, that is, it is forty chains from the northeast corner of the section to the quarter corner, and forty chains from the quarter corner to the southeast corner of the section. The north line of sections 1, 2, 3, 4, 5 and 6, in T. 15 S., R. 3 E. of the 3d P. M., is not shown to have ever been run by the government surveyors; but, in measuring the north and south lines of those sections, the field-notes show that the surveyors started from the corners of the opposite sections in the township north, 14 S., R. 3 E., 3d P. M., and ran thence south. And Johnson testified that the south line of those sections, or rather that line running from the southeast corner of section 36, in T. 14 S., R. 3 E., 3d P. M., being also the northeast corner of section 1, in T. 15 S., R. 3 E., 3d P. M., to the southwest corner of section 33, in T. 14 S., R. 3 E., 3d P. M., which is also the northwest corner of section

4, in T. 15 S., R. 3 E., 3d P. M., is deflective fifteen degrees to the south. And the testimony of Wise tends to corroborate this, and it is denied by no one; nor is the fact, testified to by Johnson, Martin and McCormick, that a line, running west from the quarter corner on the east line of one, strikes the quarter corner to which they testify on the west line of section four. The field-notes call for due east and west lines only. If there is, in fact, a deflection of the north line of the township to the south, it must follow, that unless there is a corresponding deflection of the line on the south of the north tier of sections, those sections must, as the lines proceed west, fall short by precisely the amount of the excess of the deflection in the north line over that in the south line. The law in force when the government surveyed these lines, provided that: "Where the exterior lines of the townships, which may be subdivided into sections, or half sections, exceed or do not extend six miles, the excess, or deficiency, shall be specially noticed, and added to or deducted from the western and northern ranges of sections, or half sections, in such township, according as the error may be, in running the lines from east to west, or from north to south; the sections and half sections bounded on the northern and western lines of such townships shall be sold as containing only the quantity expressed in the returns and plats respectively, and all others as containing the complete legal quantity." Fifth subdivision, Sec. 2395, Revised Statutes, U. S., p. 441.

It is true, township fifteen is fractional, but we are aware of no law or practice which authorizes a subdivison of fractional townships into sections different than as provided *supra.*

If in surveying this fraction there was an excess or deficiency, that excess or deficiency must be disposed of precisely as is an excess or deficiency where the townships are not fractional. We are not advised by any evidence in the

record, nor are we otherwise aware of the reasons that in-
duced the lines to be run from the north to the south, in-
stead of from the south to the north, as they should have
been, to adjust the excess or the deficiency, as the statute
requires; but whatever may have been the motive, if a
straight line drawn west from the quarter corner on the
east line of section one passes through what Johnson,
Martin and McCormick denominate the quarter corner on
the west line of section four, and strikes a government
quarter corner on the west line of section five, as the wit-
nesses testify, the north half of section four was deficient
in quantity by the extent of the deflection of the line from
the northeast corner of one to the northwest corner of four,
and that deficiency was properly taken from that half section.

It is true, it is required by the United States statutes
that "the boundary lines actually run and marked in the
surveys, returned by the surveyor-general, shall be estab-
lished as the proper boundary lines of the sections or sub-
divisions, for which they were intended.   And the length
of such lines, as returned, shall be held and considered as
the true length thereof."   So, also, it requires "that the
corners marked in the surveys, returned by the surveyor-
general, shall be established as the proper corners of sec-
tions, or subdivisions of sections, which they were intended
to designate."   Sec. 2396, R. S. U. S., p. 442.   And when
the measurement of the line as returned does not agree with
the distance between the corners thus established, and be-
tween which it is assumed to be the measurement, it must
be disregarded.   Monuments control as to courses and
distances.

The surveyors testifying in behalf of appellant first sur-
veyed from the north to the south, as the field-notes indi-
cate the government surveyors ran their lines; and that,
undoubtedly, was the better way to run to find the location
of lost corners; but, if the corners were found, it can be of
no consequence in what direction the lines between them

were run, since, as has before been said, they control as to corners, distances and quantities.

There is a considerable amount of evidence in the record to which we have not referred, but it has all been carefully considered, and its tendency is, in our opinion, rather to sustain the ruling below than to prove that it is erroneous. On the whole, we are not convinced that the judgment below is clearly against the weight of the evidence.

The court below recites in the record some of the facts found by it in coming to the conclusion that the plaintiff should have judgment for the property for which suit is brought. This neither adds to, nor detracts from the force of the judgment rendered. The judgment is merely that the defendant is guilty, and that the plaintiff shall recover the property described in the declaration, that is all that is decided. We think the judgment should be affirmed, and it is so adjudged.

*Affirmed.*

Subsequently, upon petition for re-hearing, the following additional opinion was filed:

Per Curiam:

Upon petition for re-hearing, we have again considered the questions arising upon this record, and the foregoing portion of the opinion first filed, treating of the principal questions involved, is re-filed, as in accordance with the views of the court.

We are of opinion, however, that the court erred in rendering judgment for the whole of the land described in the declaration. The plea denying the possession of any part of said land, that is, the S. W. Qr. of the N. W. Qr. of Sec. 4, T. 15 S., of R. 3 E., put the plaintiff upon proof of possession and unlawful withholding the same by the defendant. The real question at issue was, where the boundary line was, as between that tract and the northwest quarter of the northwest quarter of said section. And the court found, as we think, properly, that the defendant

was in possession of, and withholding, a strip of land off of the north side of the tract described in the declaration, and not of the whole tract therein described. The statute provides (5th clause, Sec. 30, Ch. 45): "If the verdict be for a part of the premises described in such declaration, the verdict shall particularly specify such part, as the same shall have been proved, with the same certainty hereinbefore required in the description of the premises claimed." The legislature had in contemplation a case like the one at bar, where an entire tract is sued for, and the plaintiff shows a right of recovery, as against the defendant, for part only. The plaintiff having disclaimed possession of the tract of land described in the declaration, by plea verified by affidavit, as required by Sec. 22, of Ch. 45, R. S., the burden was shifted to the plaintiff, to establish possession by the defendant, and he was entitled to recover in the action for only such part of the premises described as he showed the defendant to be in possession of. The judgment rendered would necessarily follow the verdict. *McArthur* v. *Porter*, 6 Pet. 205; *City of E. St. St. Louis* v. *Hackett*, 85 Ill. 382.

In this case the trial was by the court without a jury, by consent, and the court, in passing upon the question of fact performed the functions of a jury, and it was its duty, in the event of finding for the plaintiffs for part only of the premises described in the declaration, to find what part, and render judgment accordingly. Upon looking into the record it is found that the court made a finding of fact, which, while it perhaps contains some matter having no place in an ejectment suit, is nevertheless a finding that the defendant was guilty of withholding from the plaintiff a part only of the premises described in the declaration. It finds and establishes the boundary line between the northwest quarter and the southwest quarter of the northwest quarter of said section four, which finding has been ap-

8—145 ILL.

proved in the foregoing opinion. This was the question at issue, and the controversy turned upon the true location of that line, being the dividing line between appellant's and appellee's lands. That being determined and established, there was, and is in the record, no controversy as to the amount or quantity of land, described in the declaration, which the defendant was guilty of withholding. The extent of the defendant's possession was clearly shown and not controverted, and in so far as it extended south of the line found to be the true south boundary of his land, it was unlawfully withheld. The court having, therefore, found correctly where the boundary line is, should have limited its judgment to the part lying south of that line, and in possession of the defendant.

Where no error has intervened prior to the entry of judgment, but has in the entry of the wrong judgment, it has been the practice to reverse the judgment improperly rendered, and to enter the proper judgment in this court, or to remand the cause, with instructions to enter it in the trial court. *Pearsons* v. *Hamilton,* 1 Scam. 415; *Alwood* v. *Mansfield,* 33 Ill. 452.

It is said in the subsequent cases of *Storing* v. *Olney,* 44 Ill. 123, and *McNulta* v. *Ensch,* 134 Ill. 56, that the better practice is to reverse the judgment and remand the cause, with directions to the trial court to enter the proper judgment in that court. Here the finding of the disputed boundary was correct, and the extent of the defendant's possession of the tract of land found to be owned in fee by the plaintiff is, as before said, clearly shown. The court erred only in that, after finding that the defendant was guilty of withholding only a part of the land described in the declaration, it did not render its judgment for such part, particularly describing it, instead of rendering it for the whole tract claimed in the declaration. This is an error in the entry of the judgment merely, and may properly be corrected upon remandment to the trial court for that purpose.

The judgment of the Circuit Court will accordingly be reversed, and the cause remanded with directions to enter judgment finding the defendant guilty of unlawfully withholding that part of the tract described in the declaration, shown by the evidence to have been in the possession of the defendant, and no more, specifying in its judgment what part, by proper description. Plaintiff in error will recover costs in this court.

*Reversed and remanded with directions.*