FREDERICK P. READ, Appellee, *vs.* RA E. BARTLETT, Appellant.

*Opinion filed June 21, 1912—Rehearing denied October 3, 1912.*

1. PLATS—*plat referred to in deed becomes part of the conveyance.* Where a deed refers to a plat of the lots or lands the plat becomes a part of the conveyance the same as though it had been copied into the deed, and in such case the plat is regarded as furnishing as true a description of the boundaries and dimensions of the lots as though the dimensions marked thereon were written upon the face of the deed.

2. SAME—*fixed monuments mentioned in a deed or shown on plat control courses and distances.* While courses, distances and dimensions contained in a deed, either directly incorporated therein or incorporated by reference to a plat, are presumed to be true and correct, yet natural or artificial monuments mentioned in the deed or shown upon the plat as descriptive of the subject of the conveyance will prevail over courses and distances.

3. SAME—*when purchaser must ascertain where stakes are or were located.* If there is any reference to stakes, either in the deed to the lots or on the plat to which the deed refers, the purchaser is bound to ascertain where the stakes are located, or, if they have been removed or have disappeared, where they were located.

4. SAME—*when purchaser may rely upon plat as showing correct dimensions of lots.* Where there is no statutory requirement that the boundaries of lots shall be marked by stakes and there is no reference to stakes in the deed or upon the plat to which the deed refers, the purchaser may assume that the dimensions marked upon the plat in figures are correct, in the absence of notice, either actual or by stakes or monuments visible above the ground, that there is a mistake in the plat.

5. SAME—*effect of a re-survey after lots are sold according to original plat.* Where a deed to lots refers to a plat which has the dimensions of the lots marked thereon, but there are no stakes or monuments mentioned in the deed or plat or visible above the ground, the purchaser takes title according to the dimensions as shown on the plat in the absence of actual notice that such dimensions are wrong, and such title passes to her grantee who takes possession according to the original survey, even though there is then on record a second plat showing the lots to be smaller than they were shown to be by the original plat.

APPEAL from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

JONAS O. HOOVER, for appellant.

JOSEPH H. MUHLKE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 31, 1890, Frederick P. Read, the appellee, and Jonathan E. Woodbridge, being the owners of block P, (except lot 9,) Morgan Park, Washington Heights, subdivided the same into forty-seven lots, with a street (called Belmont avenue) running north and south through the block. In March, 1892, they sold lots 3, 4 and 5 to Edith J. Wolhaupter as a result of negotiations with her husband, Benjamin Wolhaupter. The lots were conveyed according to the plat of the subdivision recorded in the office of the recorder of deeds for Cook county, Illinois, October 23, 1890, in book 44 of plats, page 42. The lots fronted east on Washington avenue, and west of them were lots 20, 21 and 22, fronting west on Belmont avenue. The certificate stated that the dimensions of the lots were represented in feet and decimals of a foot, and according to the plat the lots mentioned were 50 feet wide. The tier of lots fronting west on Belmont avenue were marked 160 feet in length east and west, and the line between lots 3 and 4 was

marked 258.6 feet. The plat showed Washington avenue on the east, Belmont avenue through the block, and curved lines like those of a street, marked "Tasso Place," on the south and west, but it had no marks of stakes or other artificial monuments as boundaries of lots or elsewhere on the plat, and the certificate made no reference to any known and permanent monument from which future surveys might be made or to any stone planted and designated upon the plat, as required by the statute. Woodbridge conveyed by a quit-claim deed to the appellee all his interest in lots 20, 21 and 22, and appellee is now the owner of the same. Appellee and Woodbridge became convinced that there were mistakes in the distances marked on the plat, and in October, 1897, they caused another survey to be made on the theory that the mistakes were made in the length of the lots in the east tier. By this new survey and plat the length of the tier of lots fronting west on Belmont avenue was marked, as before, at 160 feet, and the new survey showed the length of the east tier of lots to be much less than the original plat. The line between lots 3 and 4 was shown on the new plat to be 230.25 feet instead of 258.6 feet. The second plat was filed for record on November 30, 1903. On September 9, 1905, Edith J. Wolhaupter and husband conveyed lots 3, 4 and 5 to Ra E. Bartlett, the appellant, who took possession of them according to the original plat, enclosing what the appellee claimed was the eastern portion of lots 20, 21 and 22, then owned by him. The appellee filed his bill of complaint in this case in the circuit court of Cook county on June 8, 1909, against the appellant, alleging a mistake in the first plat in setting down 258.6 instead of 230.25, and asking the court to correct and reform the plat so as to show the true dimensions of the lots. Issues were formed, which were referred to a master in chancery, with directions to take and report the evidence, with his conclusions. The master reported that at the time Edith J. Wolhaupter

bought the lots the boundaries were marked by stakes, and concluded, as a matter of law, that the dimensions of the lots appearing upon the plat must give way to the actual survey as shown by the stakes, and he recommended a decree in accordance with the prayer of the bill. The chancellor heard the cause on exceptions to the report, overruled the exceptions and entered a decree in accordance with the report, from which an appeal was prosecuted.

The statute required that the plat should give the precise length and width of the lots in the subdivision, and it purported to do so. The law is, that when a conveyance refers to a plat of lots or lands the plat becomes a part of the conveyance, just as though it had been copied into the deed. In such a case the plat is descriptive of the subject of the conveyance, and is regarded as furnishing as true a description of the boundaries and dimensions of the lots as if the dimensions marked thereon were written out upon the face of the deed. (*Louisville and Nashville Railroad Co.* v. *Koelle,* 104 Ill. 455; *Piper* v. *Connelly,* 108 id. 646; *Trustees of Schools* v. *Schroll,* 120 id. 509; *People* v. *New,* 214 id. 287; *Cragin* v. *Powell,* 128 U. S. 691; 5 Cyc. 891.) While courses, distances and dimensions contained in the deed, either directly incorporated therein or incorporated by reference to a plat, are presumed to be true and correct, it is also the rule that natural or artificial monuments mentioned in a deed or shown upon a plat as descriptive of the subject of the conveyance will prevail over courses and distances. Such monuments, as applied to the description of lots or lands, are either natural objects permanent in character, or are artificial and placed upon the land for the specific purpose of marking boundaries. It has often been decided that in the calls of a deed fixed monuments overcame and controlled courses and distances. *McClintock* v. *Rogers,* 11 Ill. 279; *Miller* v. *Beeler,* 25 id. 163; *Colvin* v. *Fell,* 40 id. 418; *Bauer* v. *Gottmanhausen,* 65 id. 499; *Kamphouse* v. *Gaffner,* 73 id. 453; *Mc-*

*Cormick* v. *Huse,* 78 id. 363; *Cottingham* v. *Parr,* 93 id.
233; *Fisher* v. *Bennehoff,* 121 id. 426; *Ogilvie* v. *Cope-
land,* 145 id. 98; *Henderson* v. *Hatterman,* 146 id. 555;
*England* v. *Vandermark,* 147 id. 76.

The claim of the appellee rests upon these cases and the
alleged fact that there were stakes at the west end of the
lots when purchased by Edith J. Wolhaupter, which would
prevail over the distances marked on the plat. Two of
these decisions (*McClintock* v. *Rogers* and *Ogilvie* v. *Cope-
land*) were based on the statute of the United States and
the system of government surveys by which appropriate
monuments were required to be erected at the corners of
townships and at intervals of one mile at the corners di-
viding the townships into sections. The statute required
that the boundary lines actually run and marked in the sur-
veys returned should be established as the boundary lines
and that the corners marked in the surveys returned should
be established as the proper corners. The court said that
the monuments erected upon the land by the government
surveyors were facts, while the field notes and plat indi-
cating courses, distances and quantity were but description
which served to assist in ascertaining the facts. In *Mc-
Cormick* v. *Huse* lands bounded by a street or bayou were
patented according to the official plat of the survey returned
to the general land office, and, there being a dispute as to
the boundaries, it was held that the original plat, or a copy
thereof, might be resorted to and that the lines as originally
returned would control. In *Henderson* v. *Hatterman* an
Indian boundary line and a street were made matter of
description in both the deed and plat and they were held
to control. In *Bauer* v. *Gottmanhausen* there were cedar
stakes placed at the corners and the center lines of lots, and
the purchasers having fenced their lots according to the
stakes, were protected both on the ground that the actual
survey controlled although the surveyor by mistake located
the lot lines ten feet too far north, and because of the

Statute of Limitations. In *Piper* v. *Connelly* there was a plat on the back of the deed which was referred to in the description of the premises conveyed, and it was regarded as more fully representing the intention of the parties than the preceding language so far as fixed monuments were concerned, and the plat, which showed the stream as a boundary, was held to control. In *Cottingham* v. *Parr* a hedge was one of the calls of the deed in the description of the land. In all the cases there were fixed monuments mentioned or referred to in the deed or plat or at least visible upon the land and plainly indicating the boundaries. No case has been cited where there was neither a statutory requirement for fixed monuments, of which a purchaser would be presumed to have notice, nor reference to the same in either a deed or a plat, nor where stakes were not plainly visible, that they were held to control the description contained in the deed, either by the language of the deed or by incorporating a plat by reference.

If there had been any reference to stakes, either in the deed or on the plat to which it referred, their location would necessarily control under the rule that fixed monuments are a superior kind of evidence to a plat which is descriptive of them, and Edith J. Wolhaupter would have been bound to ascertain where the stakes were located, or if they had been removed or had disappeared she would have been bound to ascertain where they had been driven. But there was no reference to either, and there was no requirement of the statute that there should be any stakes marking the boundaries of the lots. In the absence of any reference to stakes or monuments the purchaser was not bound to assume that the plat was incorrect or the length of the lots different from the figures shown on the plat, unless there was some notice, actual or by visible stakes upon the ground, by which a mistake was made manifest. Any purchaser would necessarily rely upon the plat in the absence of notice, either conveyed by the existence of stakes or

255 — 6

monuments or in some other way, that the lots are not as represented on the plat.

On the question whether there were any stakes visible on the lots at the time of the purchase by Edith J. Wolhaupter the evidence was, in substance, as follows: Generally speaking, the premises were a mass of brush, crab apple, wild cherry and plum trees, with vines running over them, and tall grass. The surveyor testified that there were blackberry bushes and a thicket of plum brush so thorny that one could scarcely get through it. After the survey the brush was cut down and the premises cleaned up somewhat by Woodbridge, but he said it would have taken a man a lifetime to have cleaned up the whole subdivision. There was some evidence that the brush was not as thick at the place in dispute as at other places, but this was disputed. Woodbridge testified that when on the premises and cleaning them up he saw stakes all over the plat, but some were missing, and he could not remember any individual stakes. R. J. Mershon, the surveyor, testified that he drove pine stakes, one inch square, at the corners of the lots. The appellee testified that he found stakes between lots 3, 4 and 5 and lots 20, 21 and 22 after the plat was made, in accordance with his claim. He also testified that some of the stakes were barely on the surface of the ground and some of them were just under the surface. He could not tell whether the stakes at the west end of lots 3, 4 and 5 came above the surface of the ground or not, and said that the ground was covered with shrubbery and brush, which made it difficult to find the stakes, and that one would have to get down and hunt for them. If the stakes did not come above the ground soon after they were driven there could be no presumption that they rose or became more visible afterward. He said that Benjamin Wolhaupter showed him a cedar stake on the premises in July or August, 1892, which he said he found a few feet from the line 160 feet east of Belmont avenue. Appellant's husband

testified that after the purchase he went on the premises and was there every Saturday afternoon when the weather was suitable, during that summer and fall; that he cleared the property partially of grass, weeds and brush and looked repeatedly for stakes but could find none. W. A. Bancroft testified that when appellant's husband was looking at the property before the purchase the witness went with him up on the ridge to show him the depth of the lots, and they found two stakes north and south from each other and about 50 feet apart, one north of a ravine and the other south of it. Appellant's husband denied that he ever went with Bancroft on the subdivision. He said he saw Bancroft in the street in front of it but that he never showed him any stakes and did not show him one north of the ravine and another south of it, and that the ravine was on an adjoining lot and no part of it was on lots 3, 4 and 5. He testified that in looking for the stakes he used the tools that he used in grubbing brush, and also poked around with his feet in the grass, brush and weeds. Appellant testified that she saw the lots before she bought them and went on them every Saturday afternoon with her husband for six or seven weeks afterward, and that she looked on the ground for stakes and moved the leaves in her search and found no stakes. Benjamin Wolhaupter testified that in making the purchase for his wife he wanted the deepest lots, and changed lots that he was bargaining for, for these; that he never met appellee before the purchase; that he found no stakes on the lots and never showed appellee any; that he never called appellee's attention to a cedar stake or talked to him about it, or any other stake, and that there were no stakes on the corners of the lots. The appellant's father-in-law testified that he was on the ground every Saturday afternoon for a number of weeks after the purchase, with his son and appellant; that in ascending the hill to the west at the disputed ground there was a mass of brush that one could not get through; that he looked for stakes

but found none, and that there were no stakes on the ground prior to 1906. The second survey, several years after the purchase by Edith J. Wolhaupter, was made by Frank J. Geraghty and certified to by Mershon, who was present, and said that at that time he found many stakes, and Geraghty testified that he found several old stakes which one Foster told him he put in. Geraghty said that there were two stakes with 135 feet between them, which did not correspond with the width of the lots, and that, the lots being 50 feet wide, the stakes ought to have been 100 feet apart. He said he found a piece of an old cedar stake at another place, but Mershon, who made the first survey, testified that he did not use any cedar stakes. Geraghty said he found a stake at the north-west corner of lot 3 and the south-west corner of lot 2, indicating the length of the south line of lot 4 to be 230.25 feet. After the purchase by appellant J. W. Herrington made a survey for her in 1906, and testified that he found the bottom of an old surveyor's stake 270.2 feet west of Washington avenue, which would be the same place as the north-west corner of lot 5 according to the original plat of 1890; that he placed an iron stake 26.5 feet east of the south-west corner of lot 3 according to that plat; that there was no other iron stake on any of the lots but the one he put in; that he found no other stake on the lots except the bottom of the old stake which corresponded with the original plat, and that he found no stakes measuring 160 feet east from Belmont avenue, which the appellee claimed to be the line of the stakes. Vertus B. Roberts made a survey on September 2, 1904, and testified that he found stakes showing the line between lots 3, 4 and 5 as claimed by appellee; that he found a stake at the north-west corner of lot 4 but did not remember that it came above the ground at all; that he may have found it by digging in the ground, and that they had sometimes to make quite a search for stakes. Whether the stakes he found were set in the original survey or the sec-

ond one does not appear, but they corresponded with a line fixed by the second survey, in 1897, after the sale of the lots. W. J. Griffin made a survey in December, 1906, after the purchase by appellant, and found stakes, but he said that Geraghty's book of the survey of 1897 showed that they were put there by Geraghty, and he said that they were rotten and it was hard to tell what they were.

This recital of the evidence will show that there is at least serious doubt whether there were any stakes visible on the ground in the brush, grass and weeds at the time of the purchase by Edith J. Wolhaupter, and whatever title she acquired was conveyed to appellant. The evidence for the appellee was not sufficient to overcome the presumption, upon which appellant had a right to rely, that the plat gave the correct dimensions of the lots. In our opinion the chancellor erred in overruling the exceptions and entering the decree.

The decree is reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*