[Civil No. 3729. Filed July 6, 1936.]

[59 Pac. (2d) 302.]

JOHN SARAKOFF, Petitioner, v. SIX COMPANIES, INC., a Corporation, Defendant Employer; THE INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, Respondents.

Mr. Emil Wachtel, for Petitioner.

Mr. A. R. Lynch, for Respondent Six Companies.

Mr. Don C. Babbitt and Mr. Howard A. Twitty, for Respondent Industrial Commission.

LOCKWOOD, C. J.—On April 10, 1935, John Sarakoff, hereinafter called petitioner, filed a claim for compensation with the Industrial Commission of Arizona, hereinafter called the commission, for injuries which he claimed he suffered as a result of an accident occurring in the course of his employment on November 1, 1934. On April 25, 1935, the commission made an award in which it found that his condition was not due to any injury arising out of the accident. Application was made for a rehearing, which was held on October 26, 1935, and the original award affirmed, whereupon the matter is brought before us for rehearing.

The contention of petitioner is that on November 1, 1934, and while he was working for the Six Companies, Inc., hereinafter called the employer, in the construction of Boulder Dam, his foot slipped, causing a large timber he was holding to fall upon his knee and throw him off balance so that he fell some four or five feet down an incline, striking his hip against the rough wall thereof. He reported the accident and injury to his foreman, but the latter never notified the employer. Petitioner continued at work until about. November 6th, when he was forced to stop, on account of severe back pains and a badly swollen knee. On November 7th he was hospitalized, and from then on for a considerable period was given

medical attention. His condition, however, did not improve, and he made claim for compensation. It is apparently his theory that the blow received on his knee caused a subacute synovitis of the left knee joint, and that his fall against the rock wall of the incline resulted in a subluxation of the left sacroiliac joint which has not yet been properly adjusted, and that as a result he is unable to perform any work.

It is the contention of the commission, on the contrary, that he is suffering from a hypertrophic arthritis of the knee which was caused by chronic prostatitis, and that at the time of the rehearing his general physical condition was aggravated by an acute fulminating type of tuberculosis broncho-pneumonia.

It appears from the undisputed evidence that on November 1st a large timber did fall upon petitioner, which caused him considerable pain at the time, but there is nothing except his own statement, to show that he made any complaint until November 11th, at which time he reported to the hospital of the employer, stating that he had a pain in his left leg for some days. He made no reference at that time as to any accident having caused his trouble, merely saying that he had, some few days previous to visiting the hospital, noticed a severe aching pain in his left hip which radiated down to the knee. At this time he was given both an oral and physical examination; the former being somewhat unsatisfactory, as his understanding of the English language was quite imperfect. As a result of the physical examination, the case was diagnosed by the attending physician as chronic prostatitis, with hypertrophic arthritis of the lumbar spine. He was discharged from the hospital after about a week, but was readmitted about ten days thereafter because of the continued pain in his thigh and knee. He remained in the hospital this

time a little over three weeks, and then was discharged therefrom, but continued as an out patient for about three months, his condition, according to the various examinations made by the attending physician, showing an extensive proliferative arthritis in the sacrum and the hip joints. On April 8th, for the first time, he stated to his attending physician that his condition was the result of the accident above referred to, and that the reason he had made no previous report of the matter was because of his inability to understand the English language and express himself therein. It also appears from the statement of one of the commission's investigators that the first time he had mentioned his trouble to the investigator he claimed it was due to rheumatism. He was examined on August 12th and October 17, 1935, by the medical adviser of the commission. The first examination was of the lower limbs only, and of the X-ray films and hospital records made in November, December and January preceding. As a result of this examination, the medical adviser concluded that the arthritis was what caused the subjective symptoms of pain from which the petitioner was evidently suffering, and that it was an infectious process resulting from chronic prostatitis, and could not be ascribed to the accident which petitioner claimed he had suffered. The examination of October 17th also included a sputum test and chest examination, which showed an acute miliary tuberculosis and a very bad general condition. The petitioner offered in evidence two reports of Los Angeles physicians, one dated October 9, 1935, and the other October 14th. One of them diagnosed his trouble as subacute synovitis of the left knee joint and subluxation of the left sacroiliac joint, and the physician stated that, judging from the history given by the patient, these were caused by

the accident of November 1st. The other examination concurred with the first so far as the sacroiliac condition and the sprain of the left knee was concerned, but also found the tubercular condition which was discovered a few days later by the medical adviser of the commission. All of the physicians agree that the petitioner is suffering from acute miliary tuberculosis, sufficient to account for his general condition, but there is no contention that this is in any way attributable to the accident of November 1st. They all agree that he is suffering considerable pain in his thigh and knee, which, even apart from the tubercular condition, would prevent his engaging in any active work, but when it comes to the cause of that condition, we have the usual difference of medical opinion.

The adviser for the commission and the physician who attended him during the beginning of his trouble are of the opinion that his pain comes from the arthritis produced by chronic prostatitis. The two physicians who attended him in Los Angeles believe it comes from an arthritis which was caused to flare up by the accident of November 1st. We have the usual difference in expert testimony, and, in such cases, as we have held repeatedly, the conclusion reached by the triers of fact binds us. Since the commission found, on reasonable evidence, that petitioner had not sustained the burden of proving affirmatively that his condition was caused by the accident of November 1st, we may not dispute that conclusion.

Petitioner, in his opening brief, contended that he had been denied the due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States, and by article 2 [section 4] of the Constitution of Arizona. Apparently

what he meant by this was that the individual members of the Industrial Commission were unfair and prejudiced against him. This conclusion as to his position is supported by his closing brief, in which he says that he does not claim the compensation law itself violates the Constitution, but that the individual members of the commission were not fair and impartial in their method of procedure and their conclusions.

After a careful examination of the record, the only thing outside of surmises and conjecture that we can find on which to base such a charge is the fact that the commission accepted the conclusion of Doctors Schofield and Palmer as to the cause of the petitioner's condition rather than that of Doctors Barnes and Daniels. We think that this is hardly sufficient to sustain petitioner's claim that the rights guaranteed him under the Fourteenth Amendment were violated.

The award is affirmed.

McALISTER and ROSS, JJ., concur.