184 P.2d 656

**HEIN v. NUTT et al.**

No. 4843.

Supreme Court of Arizona.

March 31, 1947.

As Corrected on Rehearing Sept. 17, 1947.

Gust, Rosenfeld, Divelbess, Robinette & Linton, of Phoenix, for appellant.

D. B. Morgan, of Phoenix (Whitney, Ironside & Whitney, of Phoenix, of counsel), for appellee Nutt.

John L. Sullivan, Atty. Gen., and John W. Rood, Asst. Atty. Gen., for State.

STANFORD, Chief Justice.

Judgment was rendered in the superior court of Pinal County in favor of defendants, the appellees herein, in an action brought to determine mainly the common corner of sections 25, 26, 35 and 36, township 9 south, range 8 east, said county. From the judgment this appeal is taken.

We will hereinafter refer to the parties as they were designated in the trial court, the appellant as plaintiff, the appellee as defendant.

The facts briefly are: The original surveys of the land involved were made by the government in 1883 and 1887. The south boundary of the township in question was surveyed by the government in 1913 at a time when the township lying south of the one herein involved was surveyed. In November, 1939, defendant Nutt acquired section 26 under a state agricultural lease. The latter part of that month he had the section surveyed by Charles H. Robertson. He also cleared the land and fenced it according to the survey; put down a well in the southeast corner and started improving and cultivating the land.

In 1939 one J. W. White commenced developing section 35, which section lies south of section 26 belonging to defendant, but White did not cultivate that part of section 35 lying north of the Santa Cruz River. The Santa Cruz River ran north-westerly through the NW¼ of said section 35 of that strip lying north of the river remaining uncleared. Section 31 in township 9 south, range 9 east, which directly adjoins to the east section 36 in question.

herein, was cleared off and developed in the spring of 1940 by one John Dawson.

In the fall of 1940 plaintiff acquired a state lease from the State of Arizona to section 36 heretofore mentioned, and in 1941 cleared, fenced and cultivated same. At the time plaintiff acquired section 36 he had the corners pointed out to him and was advised that the northwest corner, which corners with section 26 of defendant's, should be to the north and west of the point then being used, which was the point located by the Robertson survey.

In 1942 plaintiff received patents' from the State of Arizona for 370 acres in section 36, theretofore held under lease, and caused F. N. Holmquist to establish the corners of said section. The Holmquist survey showed the corner of the NW¼ of said section 36 to be approximately 110 feet north and 61 feet west of the Robertson corner, which latter corner was established by defendant herein when he took over section 26 in 1939 and made improvements thereon. These improvements included a fence and an irrigation well in the southeast corner. In March, 1944, plaintiff brought his action in the superior court asking for the establishment of the west line of the NW¼ of section 36.

Defendant, by his amended answer and counterclaim, alleges that he was the owner of an agricultural lease from the State of Arizona for section 26 involved herein, less, however, the portion of same lying south and west of the Santa Cruz River, his lease in that section being for about 550 acres and that likewise he had a lease from the state for 90 acres in section 35. As to that portion, however, north of the Santa Cruz River therefor the 90 acre lease would adjoin section 26 to the south. Defendant alleges that he was in the exclusive, continuous, open and notorious possession of said lands and cultivated the same and enhanced the value thereof for the State of Arizona and that he constructed thereon lasting improvements costing many thousands of dollars; that the boundary line established by a survey of said section by defendant was recognized and acquiesced in by plaintiff and his predecessors in interest for many past years; and that county highway and power lines had been constructed and are maintained in recognition of and in full reliance on said boundary lines, and that the boundary lines used and established by the defendant had been recognized and acquiesced in by a majority of the freeholders residing or owning lands in township 9 south, range 8 east, and the adjacent townships and ranges.

This is a case where the essential government corners are lost or obliterated and it is the contention of the plaintiff that:

"1. In a private survey made for a private purpose, the surveyor has no discretion in determining boundaries but must establish lines as nearly as possible in conformity with the original government survey.

"2. Proper procedure in private survey where there are 'lost' or 'obliterated' government corners is to restore such corners in accordance with the procedure set forth in the Manual of Instructions for the Survey of Public Lands of the United States.

"3. In boundary line disputes where the original government monuments are lost or obliterated, in the absence of proof of their original location, the plat, field notes and calls of the government survey are determinative of the rights of the parties.

"4. Proper procedure for restoring a 'lost' corner common to four sections within in a township is by the double proportionate method.

"5. Boundary line cannot be established by 'acquiescence' unless all parties affected have knowledge of the line as established and assent thereto for a long period of time."

Plaintiff in his brief states: "That this court recognizes that in boundary dispute cases involving the location or restoration of original United States monuments, the rules of General Land Office apply * * *."

Section 17-1703, A.C.A. 1939, under the heading of "Establishment of corners— * * *" reads: "Such landmarks or monuments shall be set at the section corners and quarter section corners established by the United States survey, but if there be a clerical error or omission in the government field notes or the bearings, trees, mounds, fences or other locating evidences specified therein, or if the same be destroyed or lost, and there be no evidence by which the corners established by the United States survey can be identified, then the surveyor shall re-establish said corners under the rules adopted by the United States for the survey of public lands. Landmarks, or monuments so established, shall be presumptively at the section and quarter section corners as originally established by the United States survey * *".

The foregoing statute was our law at the time of the opinion written in the case of Galbraith v. Parker, 17 Ariz. 369, 153 P. 283, 284, which stated that: "The rule seems to be equally well settled that where the original United States monuments indicating the location, upon the ground, of corners, have disappeared or have been lost or obliterated, and there is no evidence or proof as to the spot of their original placing, the plat and field notes and the calls therein are determinative of the rights of the parties in disputed boundary questions. Stangair v. Roads [41 Wash. 583, 84 P. 405], supra; Washington Rock Co. v. Young, 29 Utah 108, 80 P. 382, 110 Am.St.Rep. 666; Ogilvie v. Copeland, 145 Ill. 98, 33 N.E. 1085; Read v. Bartlett, 255 Ill. 76, 99 N.E. 345."

Necessary for our consideration are four sections in the southeast part of the township involved herein, and those sections are as heretofore stated, 36 being in the

southeast corner; 25 lying due north of it; 26 lying due west of 25; and 35 lying due south of 26.

F. N. Holmquist, who appeared as a witness for the plaintiff and who is a well known and experienced civil engineer, located at Phoenix, Arizona, testified that he sent a survey party to the premises in question, which is in another county, in the early part of 1942. When it seemed that a law suit was imminent concerning the boundary lines of section 36, he then, about two and one half years later, or in the summer of 1944, took a survey party to the property in question and made a more complete survey. In the beginning Holmquist testified that "In fact there was only one corner that was disputed, that being the northwest corner of section 36." Holmquist also testified in respect to the first survey that he went to the United States Public Survey Office and copied notes of the surveys that he thought would be needed in making this survey. He said he talked to his client, Mr. Hein, and Hein told him that the southwest corner of section 36 was in and the southeast and northeast corners of that section were also in, but that the northwest corner was disputed, but Holmquist said that when his men got on the job the southwest corner of section 36 had been somewhat obliterated but easy to restore on the evidence of the transmission line and other landmarks remaining

On this first survey in locating the northwest corner of section 36 his men went into considerable detail work. They started at the southwest corner of said section and measured north through the township and at the north line of the township, not finding corners, they did find a line of stakes which appeared to be the line and that line was tentatively accepted as the north line of the township. By that and other measurements they found the northwest corner of section 36.

In August, 1944, Mr. Holmquist went on the ground to "complete the job".

Mr. Holmquist testified that between the dates of the first survey in the early part of 1942, and the second survey in the summer of 1944, that the southeast corner of section 36 had been destroyed but he said they soon restored the point, and he also testified that in order to overcome the objection of not having a definite corner to tie into at the north line of the township that it was necessary to restore the northwest corner of section 1 on the township line. This was done after considerable work by Mr. Holmquist and his men, and the work of that survey checked closely with the former survey, and thereupon, according to testimony, came back to Phoenix and made computations and when that was done he sent a party back and measured to the west line of sections 1, 12, 13, 24, 25 and 36 and restored the northwest corner of section 36.

Leland Jones, for the plaintiff, testified that he, with his father, acquired lands in 1939 by lease, known as sections 25 and

36 in the township in question; that the same were acquired either in the fall of 1939 or spring of 1940; that he and his father sold the lease on section 36 to the plaintiff herein and DeArriega Brothers, and sold section 25 to a Mr. Rienhart. The witness further said that at the southeast corner of section 36 there were two rocks from 30 to 50 yards apart and that the rocks had Roman numerals engraved on the sides of them; that there was a mesquite post in the northeast corner of section 36 also containing Roman numerals, and the southwest corner of that section had a pipe with some numerals on the cap of it, but the northwest corner of said section 36 had nothing there to locate it.

Mr. Hein, the plaintiff, testified that he went upon section 36 in 1940. At that time Mr. Dawson was on section 31 east of him and Mr. Rienhart was on section 25 north of section 36. He testified that at that time he made no investigation to see where the boundaries of section 36 were located, but he requested that the Joneses, from whom he bought property, establish the corners before he would take possession. At the request of the Joneses, Mr. Smith, a surveyor, went out and pointed out the southeast, northeast and southwest corners of section 36, and he testified that "Since these neighbors here have fences and plow it we will put the corner to correspond with them, but if you want to spend another $250 and establish it right, it would be north and a little west of there."

Mr. Hein further testified that he built a fence thirty-three feet west of the corners that Smith gave as the northeast and southeast corners, and also built a fence thirty-three feet north of the south line as given to him by Mr. Smith, and stated that he built a fence on the west line of section 36 as indicated by Mr. Smith, likewise on the north line. But it was after that, as heretofore stated, that he employed Mr. Holmquist to make a further survey.

Charles H. Robertson, in testifying for the defendant, stated that he had lived in Pinal County, the county in which the land in question is located, for twenty-four years, except the time he served in the Corps of Engineers in the United States Army; that he had followed the profession of civil engineer since 1927, and had done survey work in the vicinity referred to. In 1939 he was employed by Mr. Nutt, Mr. Scott and Mr. Odum to run a survey in sections 15, 22 and 26 to determine the corners in reference to other sections and define the boundaries of sections 15, 22 and 26, and block out sections 16 and 23 for them; that he had several persons with him, among them being Walter Smith, a registered engineer also. Robertson stated that along the south boundary of the township in question the government had run a survey and set brass caps; that his survey located the brass caps on the township line common to sections 34 and 35. Also the brass caps on township line common to sections 35 and 36. They also

located the closing corner coming in from the south, and the corner, the southeast corner, of the township which was an original stone corner marked according to the data as given in the notice of the public land survey. From this, and other information, Robertson testified that when it came down to establishing the corner of section 26, which we understand to be the southeast corner, which is the common corner with section 36 in question, they thought that they used the methods common to survey in such cases where the corner had been lost or obliterated and took into consideration the bona fide rights of the settlers who had gone in and established their improvements. He also testified that the entire south tier of the sections were short by actual measurements.

 From 11 C.J.S., Boundaries, § 13b, p. 555, we quote: "Where the location of the original monument is lost, that is, where it cannot be discerned or established by evidence, the corner may be located or established by a new survey made from points which can be determined and in accordance with the field notes of the original survey. In general, it is to be located by running lines from the nearest identified original standard corners found to the south and east to the nearest original standard corners found in the north and west and taking the point of intersection of such lines as the corner. Where a survey becomes necessary it must be made from the east, and not from the west, boundary line of the township, and in all cases of resurvey the chain used must be made to correspond to that used by the government, by testing it with distances on the ground between two or more known monuments."

Section 17-1703, supra, says "or if the same be destroyed or lost, and there be no evidence by which the corners established by the United States survey can be identified, then the surveyor shall re-establish said corners under the rules adopted by the United States for the survey of public lands." The rule that governs in this particular case is Section 1027 under the heading of "Restoration of Lost or Obliterated Corners" and set forth in the pamphlet issued by the Government in 1939. It reads as follows:

"1027. A lost interior corner of four sections will be restored by double proportionate measurement.

"When a number of interior corners of four sections, and the intermediate quarter-section corners, are missing on all sides of the one sought to be reestablished, the entire distance must, of course, be measured between the nearest identified corners both north and south, and east and west, in accordance with the rule laid down, after first relocating the required lost section corners on the township exteriors."

Unfortunately in locating the corner in dispute herein Mr. Robertson, the surveyor, did not use the system of double propor-

tionate measurement as required by the government manual, but merely used a method whereby lines through known points were extended. Surveyor Holmquist is the only surveyor who used the double proportionate system as required in locating the southeast corner of section 26, being the northwest corner of section 36. Harry Jones, an experienced and qualified surveyor, abandoned the results of his survey and accepted the Robertson survey.

■ We would affirm the judgment of the trial court in this case if there was involved merely a disputed fact issue, Greer v. Frost, 41 Ariz. 551, 20 P.2d 301; or conflicting expert testimony, Sarakoff v. Six Companies, 48 Ariz. 99, 59 P.2d 302; or if we simply differed with the trial court upon the weight of the evidence, Hunt v. Campbell, 19 Ariz. 254, 169 P. 596. But in this case there is a clear mistake involved. The key method as laid down by our law and the United States Manual of Surveys was not used by any of the surveyors submitted by defendant. Mr. Walter Smith made quite a complete survey, yet he said he was not present and had left the work at the time that the northwest corner of section 36 was established by Mr. Robertson, but when he made another survey later he used that corner because it was the corner that had been adopted and acquiesced in by many. In that respect it is true that plaintiff built a fence on the corner pointed out to him by defendant, but some two years after the purchase, but only one year after

building the fence, plaintiff took action based on his suspicion that the corner was not correct and had Holmquist to make his first survey.

■ Estoppel cannot apply "in favor of persons whose acts were not superinduced by the declarations of the party against whom the estoppel is claimed." 11 C.J.S., Boundaries, § 73, p. 647. Therefore, there can be no estoppel here.

■■ There is no acquiescence for "In the absence of estoppel, the period of acquiescence must continue for the period prescribed by statutes relating thereto or required by statutes of limitations relating to the acquisition of title by adverse possession." 11 C.J.S., Boundaries, §§ 80, 82, pp. 653, 655. Arizona has no statute on acquiescence and our applicable statute of limitations on adverse possession, 29-102, A.C.A. 1939, requires five years. Therefore, even assuming that the required elements of acquiescence were present, the necessary time element is lacking.

Aside from the witnesses heretofore referred to, especially the surveyors, we have read with care the testimony of Mr. Samuel J. Norman, of Casa Grande, Arizona, who was a man seventy years of age at the date of the survey and who had a great deal of experience in that locality, having lived there twenty-seven years and practiced the profession of civil engineering all of that time; and Mr. Rand Bone, a civil engineer of wide experience, who appeared

on the witness stand in behalf of the State of Arizona, being the civil engineer for the State Land Department. As we understand the testimony of the various surveyors they have agreed upon the location of the common corner to sections 26, 27, 34 and 35. The north boundary line of the sections south and east of sections 26 and 35 could in no manner, therefore, be affected by any of the surveys. The only sections that could be affected by the Holmquist and Jones surveys are sections 25, 26, 35 and 36, and it occurs to us that the only place where improvements could be affected is in the common corner of those sections, which is the southeast corner of section 26, or the northwest corner of section 36. Defendant's brief says that if we gave this opinion in favor of the plaintiff the improvements on the line running between the sections in question would be out of order for many miles, and greater disaster would occur to people who had placed wells and other improvements on the south part of the section. Because of that statement we have given the matter a great deal of attention, but find on careful investigation, as aforesaid, that that is not true.

While all of the other surveyors made quite a thorough survey for their client, yet we find on the final survey of Mr. Holmquist that he first proceeded to find the four different corners of the township and then he and his party located the northwest corner of section 1. It will be remembered that sections 1, 12, 13, 24, 25 and 36 are the six sections that embrace the east side of the township and when the Holmquist survey located the northwest corner of section 1, they measured through the west line and the said sections 1, 12, 13, 24, 25 and 36 and restored the northwest corner of section 36, and it appears from the testimony that this survey was checked against the field notes and the original United States survey and the northwest corner of section 36 was restored by the double proportionate method.

Judgment reversed.

STANFORD, Chief Justice.

A rehearing was granted and certain errors appearing in our original opinion have now been corrected in the permanent printed reports.

On the motion for rehearing plaintiff-appellant complains of our statement (which is fully supported by the record) that the plaintiff Hein had a lease in 1940 from the State of Arizona covering section 36. Possibly his silent partners, the D'Arrizo brothers, also may have had an interest therein. However, this whole question is purely academic for it can have no possible bearing on the establishment of the disputed section corner.

As corrected, our opinion of March 31, 1947, shall remain in full force and effect.

LaPRADE and UDALL, JJ., concurring.