## MOYER v. LANGTON.

No. 2041. Decided January 3, 1910 (106 Pac. 508).

1. BOUNDARIES—ESTABLISHMENT—PRIOR SURVEYS. In a suit to determine the boundary line of property described as a part of "Plat 'A,' Salt Lake City Survey," there was evidence that official surveys had been made of the premises in 1856 and in 1872. One F. testified that as city engineer he surveyed them in the early eighties and that fences and stone wall then marking the boundaries of the premises agreed with the old survey, that the first survey was made in 1847, and that in 1876 there were maps and field notes of a "Salt Lake City survey" in the city engineer's office. It is also shown that a survey was made in 1890, at which time no stones or monuments of the original surveys were found, nor were the field notes of any prior official survey then in existence, but the fences and stone wall which had been accepted by the owners for many years as marking the boundaries were then in existence. The survey of 1890 located the boundaries of the land differently from those indicated by the fences and stone wall. *Held*, that the boundaries of the land established by the prior surveys and by the fences and wall controlled over the location made in the resurvey of 1890, and that deeds made in 1896 and 1905 conveying parts of the premises, which described the land as part of "Plat 'A,' Salt Lake City Survey," were to be interpreted in accordance therewith.†

2. BOUNDARIES—ESTABLISHMENT—PRESCRIPTION. Practical location of boundaries acquiesced in for a long period of years will not be disturbed. (Page 17.)

---

† Holmes v. Judge, 31 Utah, 269, 87 Pac. 1009.

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by G. W. Moyer against James Langton.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Edwards, Smith & Price* for appellant.

*Dey & Hoppaugh* and *G. W. Moyer* for respondent.

### APPELLANT'S POINTS.

Appellant contends that the deeds from Mrs. Stoutt to George W. Moyer and James Langton, describing the premises as commencing . . . plat "A," Salt Lake City survey, had reference solely to the survey of 1890, and that each of said grantees bought with a view to the lines established by the later and only survey of record at the time the deeds were made, and that such survey, whether right or wrong, governs. (*Holmes v. Judge,* 31 Utah 281.)

Where a description refers to a map, plat or survey it is made apart of the deed as much as attached thereto. (*Chapman v. Pollack,* 11 Pac. 764; *Smita v. Young,* 43 N. E. 486, 489; *Black v. Sprague,* 54 Cal. 266; *Nixolin v. Schnerderline,* 33 N. W. 33; Cyc., vol. 13, page 633, note 7.)

Where a description commences at an established point such point controls. (*Hale v. Swift,* 63 S. W. 288; *O'Herrin v. Brooks,* 6 S. Rep. 844.)

In Moyer's deed there is no ambiguity, and when the starting point, the northeast corner, lot six, Salt Lake City survey, is found, all is clear and no evidence is proper except to fix the starting point which is fixed by the survey. (*Muldoon v. Deline,* 31 N. E. 1091; *Bradley v. Crane,* 54 N. W. 740; Elliott on Evidence, vol. 1, sec. 602 and note; *Powers v. Jackman,* 50 Cal. 429.)

When the dispute is as to which of two points is the established corner, and one point is where such corners are usually

established and such as to give each one the quantity of land purchased and the other is remote and gives to some more and others less than the quantity of land purchased, it surely will require very small evidence to convince the mind that the former is the true line, than that the latter is. (*Yocum v. Haskin,* 46 N. Y. 1065.)

"A practical location by coterminous owners determine the boundaries and fixes the rights." (4 Enc. of Law, p. 859, [2d Ed.].)

"When the line has been clearly established by practical location marked upon the ground and acquiesces therein for seven years, it is sufficient to establish the line." (4 Enc. of Law, [2d Ed.], p. 863.)

"The continuance of a fence for more than the statutory period (in this case for fifty years) is conclusive presumption that it is the true line." (5 Cyc., 941 and 942.)

"Long acquiesence in a line run by an official surveyor will conclude the parties." (5 Cyc., 950.)

"Lines actually run and marked on the ground are the best evidence of the true location of a survey, and these may be proven by any evidence, direct or circumstantial, competent to prove any other disputed fact." (5 Cyc., 962.)

"The rule for determining lost corners of a survey, when some remain, is to run the lost lines according to the courses and distances in the survey, unless the lines so run do not close the survey with the corners remaining, in which case the courses in the survey must be followed and the distances disregarded, and if the survey cannot then be made to close, the courses themselves must be deviated from. And where vestiges of an ancient boundary are to be seen new posts should be fixed, but they must be placed where the former limit or fence stood." (5 Cyc., 872, together with notes and authorities there cited.)

### RESPONDENT'S POINTS.

Where a deed of a lot in a recorded plat describes property by metes and bounds beginning with the words "the corner of," thus making the corner of a lot or block the ini-

tial point of description, the corner referred to is the intersection of the property lines and not the intersection of the line in the center of the street. (*Wegge v. Madler*, 129 Wis. 412; 116 Am. State Reps., 953; *Harley v. VanHouten*, 22 N. J. Law 61; *Smith v. State*, 23 N. J. Law 130.)

A city council has no right to change the boundaries of a street by a resurvey. (*City of Racine v. Emerson*, [Wis.], 39 Am. St. Rep. 819; *Racine v. J. I. Case Plow Co.*, 56. Wis. 539; *State v. Schwin*, 65 Wis. 207; *Miner v. Brader*, 65 Wis. 537; *Koenig v. Jung*, 73 Wis. 178; *O'Rena v. City of Santa Barbara*, 91 Cal. 621; *Diehl v. Zanger*, 39 Mich. 601; *Washington Rock Co. v. Young*, 29 Utah 110 Am. St. Rep. 666; *Pereles v. Gross*, 129 Wis. 122, 110 Am. St. Rep. 901; *Cragin v. Powell*, 128 U. S. 691, 5 Cyc., p. 962, note E; *Holmes v. Judge*, 31 Utah 269.)

STRAUP, C. J.

In 1896 and prior thereto Adeline Stoutt owned a parcel of ground, 10 x 6 2-3 rods, in lot 6, block 33, plat "A," Salt Lake City Survey. The 10 rods faced east on Main Street, and the 6 2-3 faced north on Fifth South Street. The northeast corner of the parcel is the northeast corner of the block. In 1896 she sold to the plaintiff, George W. Moyer, the south 3x6 2-3 rods of the parcel. In 1905 she sold to the defendant, James Langton, 3x6 2-3 rods adjoining on the north the ground sold to Moyer. Later she sold 4x6 2-3 rods to Fleishman lying immediately north of the ground sold to Langton. This suit involves the boundary line between Moyer's and Langton's ground. The strip of ground involved is about four or five feet in width.

The case was tried to the court, who found the facts as follows:

"(1) That on and prior to the 11th day of December, 1896, one Adeline Stoutt was the owner of the following described part or parcel of lot 6, block 33, plat 'A,' Salt Lake City survey, in the county of Salt Lake and State of Utah, to wit: Commencing at the northeast corner of said lot 6, and running thence south 10 rods, thence west 6 2-3 rods, thence north 10 rods, thence east 6 2-3 rods, to the place of beginning.

"(2) That thereafter, on said last mentioned date, said Adeline Stoutt sold and conveyed to said George W. Moyer part of lot 6, in block 33, plat 'A,' Salt Lake City survey, described as follows: Commencing at a point 7 rods south of the northeast corner of said lot 6, thence west 6 2-3 rods, thence south 3 rods, thence east 6 2-3 rods, thence north 3 rods, to the beginning.

"(3) That thereafter, and on or about the 22d day of May, 1905, said Adeline Stoutt sold and conveyed to the defendant, James Langton, part of said lot 6, in block 33, plat 'A,' Salt Lake City survey: Commencing at a point four rods south of the northeast corner of said lot 6, thence west 6 2-3 rods, thence south 3 rods, thence east 6 2-3 rods, thence north 3 rods, to the place of beginning.

"(4) That there are in existence no official monuments of the original Salt Lake City survey, by which or from which the northeast corner of said lot 6, block 33, plat 'A,' Salt Lake City survey, can be fixed and determined.

"(5) That from the earliest period under the Salt Lake City survey as originally made until after the purchase of said property by said plaintiff said lot 6 was marked, bounded, and determined by a fence on the north side thereof, bordering on Fifth South street; also by a fence on the east end thereof bordering on Main street; also by a fence from Main street extending westerly on the line between lots 6 and 7, the same being the south side line of lot 6, for a distance of 6 2-3 rods or more.

"(6) That on or about the year 1883 the then owner of the property described in finding No. 1 herein, with the consent of the owner of the adjacent property bordering on the south, replaced said fence along the line between said lots 6 and 7 by a stone wall about 1½ feet in width and varying from 0.5 to 4.0 feet in height, and extending from said Main street westerly along said line of lots 6 and 7 for a distance of 107.6 feet to a stone wall running north and south.

"(7) That said stone wall along the line between said lots 6 and 7 has stood ever since the same was erected, and still continues to stand, and has been and was recognized and acquiesced in by the said Adeline Stoutt and her predecessors in interest as the south boundary line of her property, consisting of a part of lot 6, as hereinbefore described.

"(8) That said fence along said Main street and the east boundary line of said lot 6, and also said fence along the north boundary of said lot 6 and Fifth South street, has been recognized and acquiesced in ever since the same was constructed, as defining the proper east boundary line and proper north boundary line of said lot 6, and as long as said fences remained standing.

"(9) That after the purchase of said property described in. finding No. 1 by said Adeline Stoutt, to wit, in the year 1896, she caused said fence on the north boundary line and said fence on the east boundary line to be removed, and said lot filled and graded; and

no fence has ever been erected to take the place of said fences so removed.

"(10) That on or about the 1st day of April, 1890, the city council of Salt Lake City passed an ordinance whereby it was made the duty of the city engineer to make as soon as the time and means at his command would allow 'a complete resurvey of the entire city, including all streets, sidewalks, alleys, avenues, public squares, parks, and all public or private lands, which shall constitute and be the official survey of the city,' and providing, further, that all lines thereby established shall be perpetuated by substantial and permanent stone monuments, or otherwise, as the city engineer might determine. That thereafter such resurvey was made and approved. That in making said resurvey none of the original marks or monuments were found in any way defining the location of said block 33, including said lot 6, or any of the corners thereof, according to the original official Salt Lake City Survey.

"(11) That at the time when said 'resurvey' was made the old fence on the north side of said lot 6 bounding on Fifth South street, and the old fence on the east end of said lot bordering on Main street, and the stone wall along the south side of said lot 6 to the distance west as hereinbefore found, were then standing, surveyed, located, and platted by the city engineer.

"(12) That in making said resurvey under said ordinance said city engineer established the northeast corner of said block 33, the same being the northeast corner of said lot 6, at a point 5.4 feet south and 2.8 feet west of the original corner and intersection according to said fence lines, and thereby in and by said resurvey made the south line of said lot 6 at Main street 4.1 feet south of the south line of said stone wall and 5.1 feet south of said stone wall at the westerly end of the same.

"(13) That hereto attached is Exhibit 6 for the purpose of representing said fence lines and said stone wall in reference to the lines of the resurvey in connection with the property described in the first finding of fact herein.

"(14) The court further finds that by following the line as marked by the old fences there is sufficient land along the frontage of said block 33 on Main street to give to each of the respective owners his proper portion without any interference.

"(15) The court further finds that the deeds to the plaintiff and defendant, respectively, and also the deed to their said grantor as well as all prior deeds conveying said property, were made without any reference to and were not intended to describe the property according to the resurvey aforesaid.

"(16) That it was mutually intended and understood by the deed of conveyance received by plaintiff as aforesaid that the plaintiff was to and did become the owner of the south 3 rods off of the east 6 2-3 rods of said lot 6, as bounded on the south by the south line of said stone wall.

"(17) That by the deed to the said defendant it was intended that the said defendant should become the owner, and thereby became the owner, of the premises immediately adjoining the premises of said plaintiff on the north as described in the proceeding findings of fact.

"(18) That, according to the aforesaid resurvey of Salt Lake City, the dividing line at Main street between the respective portions or parts of said lot 6 owned by the plaintiff and defendant herein, respectively, is a point 111.4 feet south of the northeast corner of said lot 6, block 33, as established by said resurvey.

"(19) That under the original Salt Lake City survey the northeast corner and the north, east, and south boundaries of said lot 6 are as marked and defined by the fences and wall heretofore erected and hereinbefore described."

Upon these findings, the court entered a judgment fixing the north boundary line of plaintiff's land three rods north of the south line of the stone wall referred to in the findings. The defendant appeals.

In the respective deeds from Adeline Stoutt to Moyer and Langton, the ground conveyed is described as commencing at certain points south of "the northeast corner of lot 6, block 33, plat 'A,' Salt Lake City Survey." The evidence and findings show that the northeast corner of that lot, as shown by the survey of 1890, is at a point about four or five feet south of the point as shown by the fence lines referred to in the findings. Starting at the point as shown by that survey, the south line of lot 6 would be about four or five feet south of the stone wall referred to in finding No. 6, which, since the year 1883, marked the south boundary line of lot 6, and which was recognized and acquiesced in as such. The findings which the court made with respect to the fences and stone wall are not questioned. The principal contention made by the appellant is this: That the description in plaintiff's deed, commencing seven rods south of the northeast corner of lot 6, etc., "Salt Lake City Survey," refers to the corner of the lot as shown by the survey of 1890, and that the north boundary line of plaintiff's ground is therefore seven rods south of that point. In other words, it is argued that the words "Salt Lake City Survey" contained in the deed "had reference solely to the survey of 1890," and that

it must be conclusively presumed, when the plaintiff purchased the land in 1896 and accepted the deed containing such a description, he took it "with reference to the 1890 survey, which cannot be varied by parol evidence." Such argument is based upon the assumption that there is no evidence to show that there was an official survey—a Salt Lake City Survey—of block 33, until the survey of 1890 was made.

In this we think counsel are in error. In each deed of conveyance, from the mayor's deed in 1872 to the time of the last deed, the premises have been described as "lot 6, block 33, plat 'A,' Salt Lake City Survey." There is evidence to show that, when the city was entered under the townsite act, it was platted and laid off into "streets, squares, lots and blocks showing the size of the same," and that official surveys were made in 1856 and 1872. It was also shown that there was a "plat 'A' of Salt Lake City Survey" which was made by Jesse W. Fox, Jr., city surveyor, and which was accepted and approved by the city council of Salt Lake City in February, 1889, as the official plat of Salt Lake City and was filed in the office of the county recorder. Jesse W. Fox, Jr., testified that in the early 80's, and at a time when he was the city engineer of Salt Lake City, he made surveys of different portions of block 33, and that the fence lines, especially the stone wall, agreed with the old survey; that the first survey of plat "A" was made in 1847, and that, when he assumed the duties of his office in 1876, there were maps and field notes of "a Salt Lake City Survey" in the city engineer's office. The evidence shows that the survey which was made in 1890 was not an original survey, but, as found by the court, only a resurvey. A witness who was an assistant city engineer, and who assisted in making that survey, testified that the resurvey of 1890 was made because "there was no records by which we could make surveys for private parties in the city and that the resurvey was made under the instruction of the city council, and that the plat which was then made did not differ in the location of the streets, lots, and blocks from the plats on file of the prior surveys." He further testified that in making such

resurvey a great many stones and monuments—most all of them—of the old survey were found and were followed. It was, however, shown that no stones nor monuments of the original survey, nor of any prior survey, were found on the ground marking the northeast corner of block 33. Nor were the field notes of the original nor of any prior official survey of block 33 in existence. But, when the resurvey was made, the fences, the one on the north of lot 6, the one on the east of that lot, and the stone wall on the south marking the boundary line between lots 6 and 7, were then on the premises. These fences are indicated and shown on the official plat of the resurvey. Counsel for appellant in their brief concede that "there is no dispute in the evidence that lot 6 was bounded by a fence on the north side thereof, bordering on Fifth South Street; also by a fence on the east end thereof bordering on Main Street; also by a fence (the stone wall) on Main Street extending westerly on the supposed line between lots 6 and 7 for a distance of 6 2-3 rods, and that these fences had been erected and maintained so, except where they were replaced by other fences, for a number of years previous to the commencement of this action." It is, however, claimed by them that, since there was no official survey of block 33 until in 1890, the fences, which were constructed long prior thereto, were not erected nor maintained along the line of, nor in accordance with, any official survey, and were therefore not evidentiary of the boundary lines nor of the established corners of the lot, which, they assert, were not established until in 1890. Upon the record we cannot agree with the contention that there was no Salt Lake City survey until the survey of 1890, nor that the boundary lines and corners of lot 6 and of block 33 were not established until in 1890, nor that the survey of 1890 was an original survey establishing such boundaries and corners. The evidence is ample to support the finding of the court that there was "a Salt Lake City Survey" prior to the survey of 1890, and that the boundaries and corners of the lot and block in question were fixed and established long prior

thereto. True, the field notes and monuments of the old survey showing the boundaries and corners of the lot and block are not now in existence, and were not in existence when the resurvey of 1890 was made. But, when the original landmarks "are no longer discoverable, the question is," said Judge Cooley in a concurring opinion, in the case of *Diehl v. Zanger,* 39 Mich. 601, "where they were located; and upon that question the best possible evidence is usually to be found in the practical location of the lines, made at a time when the original monuments were presumably in existence and probably well known. As between old boundary fences, and any survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of a lot actually are." And so are the authorities generally. We think it would be a strained and unwarranted construction to hold that under all the circumstances the words "Salt Lake City Survey" in plaintiff's deed referred alone to the lines of the resurvey of 1890, and that the corner of the lot is as shown by that survey, regardless of the fences and other evidence tending to show that it is at a different place. The evidence conlusively shows that th survey of 1890 was not an original survey, but a resurvey for the purpose of determining the lines of the old survey and plat, and that the survey which was made in 1890 of the lot and block in question was not made for the purpose of establishing corners and boundaries which had not been theretofore fixed and established, but was made only for the purpose of determining the location of them as theretofore fixed and established.

In the case of the *City of Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177, 39 Am. St. Rep. 819, the court said:

"A resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in the old plat is not competent evidence in the case. . . . A resurvey must agree with the old survey and plat to be of any use in determining" where the true line is as fixed by the original plat. "Resurveys for the lawful purpose of determining the lines of an old survey and plat are generally very unreliable as evidence of the true lines. The fact, generally known and quite apparent in the records of courts, is that two

consecutive surveys by different surveyors seldom, if ever, agree; and, the greater number of surveys, the greater number of differences and disagreements will occur. . . . Monuments set by the original survey in the ground, and named or referred to in the plat, are the highest and best evidence. If there are none such, then stakes set by the surveyor to indicate corners of lots or blocks or the lines of streets at the time or soon thereafter are the next best evidence. The building of a fence or building according to such stakes, while they were present, become monuments after such stakes have been removed or disappeared, and the next best evidence of the true line."

To the same effect is also the case of *O'Rena v. City of Santa Barbara*, 91 Cal. 621, 28 Pac. 268.

We think the fences erected, maintained, and acquiesced in, as found by the court, became "monuments" indicating the boundaries of the lot, and were sufficient to justify the finding that the northeast corner of the lot is as shown by the fences. Furthermore, and as said by Mr. Freeman in his notes to the case of *Washington Rock Co. v. Young*, 29 Utah, 108, 110 Am. St. Rep. 682, when questions arise as to the true location of a boundary line, the practical location thereof by the persons interested becomes of the highest importance. It is a well-settled rule of law, resting upon public policy, that a practical location of boundaries which has been acquiesced in for a long period of years will not be disturbed. This doctrine has been adopted as a rule of repose with a view of quieting titles and preventing litigation. In the case of *Holmes v. Judge*, 31 Utah 269, 87 Pac. 1009, it was held by this court that "in all cases where the boundary is open, and visibly marked by monuments, fences, or buildings, and is knowingly acquiesced in for a long term of years, the law will imply an agreement fixing the boundary as located, and will not permit the parties nor their grantees to depart from such line." Here Adeline Stoutt, the common grantor of both plaintiff and defendant, and her grantors, for many years recognized and treated the stone wall as the south boundary line of lot 6 the fence on the north as to the north boundary line of the lot, and the fence on the east as the east boundary line of the lot.

She and her grantors for many years occupied the lot so inclosed by the fences and the wall, and claimed the ground up to such boundary lines. The boundaries as so marked were open and visible. It is conceded that the stone wall became a practical location of the south boundary line of the lot, and that it was recognized and acquiesced in as such by Adeline Stoutt and her grantors for many years, beyond which neither she nor her grantees can claim notwithstanding, according to the survey of 1890, the south line of the lot is four or five feet south of the wall. But the fence on the north was also recognized and acquiesced in as the north boundary line of the lot. The pertinent question in the case is not where is the northeast corner of the lot as shown by the resurvey of 1890, but where is it as it was originally fixed and established. On that question the resurvey is itself only evidentiary, and not conclusive. We think the fences and the stone walls are strong evidence of where the lines of the lot actually are and where the location of the northeast corner of the lot is, and amply justified the trial court in locating it where he did in accordance with the fences. By so locating the corner of the lot the plaintiff and the defendant each have three rods of ground, and Fleishman four rods, the amount of ground conveyed to them and called for by their respective deeds of conveyance. If the corner of the lot shall be located as shown by the resurvey, Fleishman and the defendant each have the amount of ground called for by their deeds, but Moyer, the plaintiff, has four or five feet less than that conveyed to him and called for by his deed.

We think the findings of the court are supported by the evidence, and that the judgment entered thereon was proper. The judgment of the court below is therefore affirmed, with costs.

McCARTY, J., and LEWIS, District Judge, concur.