[Civil No. 1438.  Filed December 11, 1915.]

[153 Pac. 283.]

W. J. GALBRAITH, Appellant, v. P. P. PARKER, Appellee.

1. BOUNDARIES — CONTROLLING ELEMENTS — SURVEYS — MONUMENTS.— Government monuments of corners, as placed upon public lands surveyed, control the calls of the maps, plats and field-notes.

[As to controlling calls in surveys, see note in 22 **Am. St. Rep.** 34.]

2. BOUNDARIES — SURVEYS — MONUMENTS — DISAPPEARANCE—EFFECT.— Where original United States monuments indicating the location upon the ground of corners of a survey of public lands have disappeared, been lost or obliterated, in the absence of evidence as to the proof of their original location the plat of the survey and field-notes and the calls are determinative of the rights of the parties in boundary disputes.

3. BOUNDARIES—SURVEYS—APPORTIONMENT OF DISCREPANCIES. — Where excesses or deficiencies occur in the area of lands laid out by public survey, such discrepancies must be apportioned, and the inaccuracies in the original survey equally distributed between the owners of the land.

4. EJECTMENT — BASIS OF RECOVERY — TITLE.—Where plaintiff seeking possession of land introduced no evidence locating quarter section corners which were necessary to be located to determine the boundary between plaintiff and defendant, plaintiff could not recover, since in such case he can recover only on the strength of his own title, not upon the weakness of defendant's.

APPEAL from a judgment of the Superior Court of the County of Maricopa. John C. Phillips, Judge. Reversed and remanded, with directions.

Messrs. Struckmeyer & Jenckes, for Appellant.

Messrs. Alexander & Christy, for Appellee.

ROSS, C. J.—The appellee, who was the plaintiff in the lower court, instituted this action against the defendant-appellant to recover the possession of a strip of land 726 feet in width and the length of a 40-acre subdivision. The plaintiff is the owner, without question, of the north half of the southwest quarter, and the northwest quarter of the southeast

XVII Ariz.—24

quarter, of section 25, township 1 north, range 1 east, Gila and Salt river base and meridian. The defendant is the owner, without question, of the east half of the northwest quarter of the same section. Plaintiff's land was patented in 1892 to one Noak, and the plaintiff became the owner through various mesne conveyances. Defendant's land was patented to him in October, 1913. The controversy is over where the quarter section line dividing the northeast quarter of the southwest quarter of section 25, belonging to the plaintiff, and the southeast quarter of the northwest quarter, same section, belonging to the defendant, should be. According to the plaintiff's claim, as set forth in his complaint, this dividing line is 726 feet north of where the defendant contends it should be.

This township was surveyed and platted by the United States government in 1868 or 1869, and the evidence introduced at the trial makes it clear that many of the original monuments at the time of the trial of this case had been obliterated. It was the contention of the defendant that the original field-notes and plat were the only proper evidence to be relied upon to establish the boundary line between his property and the plaintiff's.

The government's original monument marking and locating the southeast corner of the township, identical with the southeast corner of section 36, was found in place upon the ground. Starting from that point and tracing the township line which is the east boundary line of sections 36 and 25, the calls of the United States' field-notes and plat are one mile for each section. In other words, according to field-notes and plat, the northeast corner of section 25 should be two miles north of the southeast corner of section 36. No government monument was found at the northeast corner of 36 identical with the southeast corner of 25, and none was found at the quarter section corners on the east or west sides of section 25. It is admitted that townships are surveyed by the government beginning at the southeast corner of the township, and that ordinarily efforts to locate lost monuments should start with the initial point of the original survey; but in this case the plaintiff disregarded that rule by introducing evidence of monuments testified to as being original government monuments of the northeast corner and northwest corner and north quarter corner of section 25, and he insists that these, being

found on the ground and established, should control in the ascertainment of the dividing line between his land and the defendant's. We think the evidence of witnesses who lived on section 25 for 30 to 35 years fairly and reasonably established the corners of section 25 as contended for by the plaintiff. There was, however, no evidence introduced by either the plaintiff or defendant showing the location of the east quarter section corner or west quarter section corner of section 25, a direct line between which two points should establish the dividing line between the plaintiff and defendant. As one of the attorneys for the plaintiff in the course of the trial said, ''I have established there are no actual monuments,'' referring to monuments which should indicate the line dividing plaintiff's and defendant's land.

The Salt river runs through the southern part of section 25, and at this point widens out and covers quite an area of ground. One of the surveyors who testified for the plaintiff said:

''It has been known for a number of years that there is a mistake made in that township and made immediately north of the river; of the base line, I should say. . . . There is a gap in there in that south tier of sections, and it is probably caused by the difficulty of crossing the river. I imagine at the time of the survey the river was up and they triangulated across there and got it too short or too long.''

This discrepancy or ''gap'' occurs somewhere between the base line and the north end line of section 25 as claimed and established by the plaintiff. We state it in the language of plaintiff's attorney:

''We don't deny the fact that, if he measured from the base line north on the east line of section 36 and 25 from the northeast corner of section 25, the two-mile measure will fall short or south 726 feet of the point that Major Ivy said he found the monument or stake and pit where the ditch turns west and turns out at the northeast corner and ran on the same way to the northwest corner.''

While, according to the plaintiff's complaint, the disputed area is only 726 feet in width and the length of a 40-acre tract, witness Frank Trott, who made an actual survey of the disputed ground, describes the discrepancy as follows:

"I ran a line on the east half and the west half of sections 25 and 36 to the base line. On the east side the distance is 737 feet greater than the two miles and on the west side 755 feet. I don't know just where Mr. Galbraith's claimed line is. From the base line to the corner claimed by Captain Parker as the northwest corner of section 25 is 11,315 feet. In other words, an excess over 2 miles of 755 feet."

The case was tried to a jury, which returned the following verdict:

"We find that the plaintiff is the owner of all the land in dispute and lying south of a line running east and west between a point on the east line of section twenty-five (25), township one (1) north, range one (1) east, being a distance of 2,640 feet south of a stone at the northeast corner of said section twenty-five and a distance of 8,656 feet north of the southeast corner of section thirty-six . . . and a point on the west line of said section twenty-five, . . . being a distance of 2,640 feet south of a stone at the northwest corner of said section twenty-five and a distance of 8,675 feet north of the southwest corner of said section thirty-six. . . . "

According to the verdict of the jury, the area in excess of two miles from the base line, beginning at the southeast corner of section 36, to the northeast corner of section 25, the claimed northern boundary of said section 25, as made by the plaintiff, is 736 feet, and on the west the excess is 755 feet.

It will be seen from the wording of the verdict that the dividing line between the land of the plaintiff and defendant was tied to the closest known and ascertained government corners, to wit, the southeast and southwest corners of section 36 and the northeast and northwest corners of section 25. Whether the rule adopted in the ascertainment of this dividing line is the correct rule is the question. The law seems to be very well settled that government monuments of corners, as placed upon the ground, control over the calls of the maps, plats and field-notes. Therefore, although the monuments of the northeast corner and northwest corner of section 25 are north of the calls of the field-notes on one side 755 feet and on the other 736 feet, still we are bound to accept them as marking the correct line, instead of relying upon the plat and field-notes. *Morrison* v. *Neff* (Neb.), 20 N. W. 254; *Stangair* v. *Roads*, 41 Wash. 583, 84 Pac. 405; *Goodman* v. *Myrick*, 5

Or. 65; *Killgore* v. *Carmichael,* 42 Or. 618, 72 Pac. 637; *Harrington* v. *Boehmer,* 134 Cal. 196, 66 Pac. 214, 489; *Hess* v. *Meyer,* 73 Mich. 259, 41 N. W. 422; *Mayor* v. *Burns,* 114 Mo. 426, 19 S. W. 1107, 21 S. W. 728.

The rule seems to be equally well settled that where the original United States monuments indicating the location, upon the ground, of corners, have disappeared or have been lost or obliterated, and there is no evidence or proof as to the spot of their original placing, the plat and field-notes and the calls therein are determinative of the rights of the parties in disputed boundary questions. *Stangair* v. *Roads, supra; Washington Rock Co.* v. *Young,* 29 Utah, 108, 110 Am. St. Rep. 666, 80 Pac. 382; *Ogilvie* v. *Copeland,* 145 Ill. 98, 33 N. E. 1085; *Read* v. *Bartlett,* 255 Ill. 76, 99 N. E. 345.

Applying the rule last stated to the ascertainment of the northeast corner and the northwest corner of section 36, the surveyor's field-notes and plat placed these corners 5,280 feet north of the base line. The law definitely locates these corners at those points, for the reason that monuments have been obliterated and destroyed and there is no evidence of their proper location, except the calls of the field-notes and plat. The excess, therefore, must be credited to section 25. Instead of the east and west lines of section 25 being 5,280 feet in length, as designated in the field-notes, we find the east line to be 6,016 feet and the west line to be 6,035 feet.

When excesses or deficiencies occur, the rule laid down by the Land Department is that they shall be apportioned and the inaccuracies in the original surveys must be equally distributed. In the case of *Wescott* v. *Craig* (Colo.), 151 Pac. 934, the rule is stated to be as follows:

"Where on a line of the same survey, between remote corners, the whole length of which line is found to be variant from the length called for, in re-establishing lost intermediate monuments, as marking subdivisional tracts, we are not permitted to presume merely that a variance arose from the defective survey of any part; but we must conclude, in the absence of circumstances showing the contrary, that it arose from the imperfect measurement of the whole line, and distribute such variance between the several subdivisions of such line, in proportion to their respective lengths." 9 Cyc. 974.

The editor's note to *Caylor* v. *Luzadder,* 45 Am. St. Rep.
183 (137 Ind. 319, 36 N. E. 909), says:

"If lines of a survey are found to be either shorter or
longer than stated in the original plat or field-notes, the causes
contributing to such mistake will be presumed to have.oper-
ated equally in all parts of the original plat or survey, and
every lot or parcel must bear the burden or receive the benefit
of a corrected resurvey, in the proportion which its frontage,
as stated in the original plat or field-notes, bears to the whole
frontage as there set forth. *Percles* v. *Magoon,* 78 Wis. 27,
23 Am. St. Rep. 389, and note [46 N. W. 1047]. This rule
applies to government surveys. *James* v. *Drew,* 68 Miss. 518,
24 Am. St. Rep. 287, [9 South. 293]."

The rule is stated in 4 R. C. L. 115, as follows:

"When division lines are run splitting up into parts larger
tracts, it is occasionally discovered that the original tract
contained either more or less than the area assigned to it in
a plan or prior deed. Questions then arise as to the proper
apportionment of the surplus or deficiency. In such cases the
rule is that no grantee is entitled to any preference over the
others, and the excess should be divided among, or the defi-
ciency borne by, all of the smaller tracts or lots in proportion
to their areas. The causes contributing to the error or mis-
take are presumed to have operated equally on all parts of
the original plat or survey, and for this reason every lot or
parcel must bear its proportionate part of the burden or
receive its share of the benefit of a corrected resurvey. This
rule for allotting the deficiency or excess among all the tracts
within the limits of the survey may be applied where the
original surveys have been found to have been erroneous, or
where the original corners and lines have become obliterated
or lost."

The original quarter-section corners on the east and west
line of section 25 being lost, unknown and undiscoverable upon
the ground, it would seem that any gain to the owners of the
land in that section should be equally distributed, and not all
awarded to those living in the southern tier of 40-acre tracts.
In fact, one of the witnesses for the plaintiff in this case, Mr.
Gus Streitz, who has been surveyor of Maricopa county sev-
eral times and who is unquestionably familiar with the rules
of the Land Department with reference to surveying for lost

monuments, testified that he, in an effort to readjust some other disputes over boundaries in the same township, endeavored to apportion and distribute the excess in the manner indicated by the rule above announced. He says: "I apportioned between the known corners to the best of my knowledge and ability."

Our attention has not been called to any rule of law, nor have we been able to find one, authorizing the location of the line dividing the land of plaintiff and defendant in the manner pursued in this case. Why not arbitrarily adopt the northeast corner and the northwest corner of section 36 and measure 2,640 feet north along the east and west lines of section 25, tie the two points by an east and west line, and call it the dividing line, or start from the southeast and southwest corners of section 36 on the base line and run lines on the east and west side of sections 36 and 25 northerly 7,920 feet, and tie these points by a line and call it the dividing line? To do this would be no more inequitable, unfair or violative of law than the method actually adopted.

The defendant has assigned a great number of errors; but, as we view the case, on its retrial matters complained of can hardly recur. He, at the close of the plaintiff's case, asked for a directed verdict, which was refused. It seems to us that, inasmuch as the law in a case of this kind requires that the plaintiff recover, if at all, on the strength of his title and not upon the weakness of his adversary's title, the motion should have been granted. At the time the motion was made the plaintiff had introduced no evidence locating the quarter section corners on the east and west sides of section 25 as originally made by the government. Had the plaintiff, by his evidence, established the points where the original government corners were placed designating the quarter section corners, then he would have furnished a basis upon which to determine the rights of himself and the defendant; not having done that, he was not entitled to judgment.

Judgment is reversed and remanded, with directions that a new trial be had.

FRANKLIN and CUNNINGHAM, JJ., concur.