ROACH v. DAHL

No. 5354. Decided September 21, 1934. (35 P. [2d] 993.)

*P. C. Evans,* of Salt Lake City, for appellant.

*Fabian & Clendenin* and *D. Howe Moffat,* all of Salt Lake City, for respondent.

WOOLLEY, District Judge.

This is a suit to quiet title to real estate, in which the defendant filed a counterclaim praying for the same kind of relief against the plaintiff. The plaintiff is the owner of the east half of the southeast quarter and the southwest half of the southeast quarter of section 13, township 1 south, range 3 east, Salt Lake Meridian, in Summit county, Utah; the defendant of the west half of the northeast quarter, the northwest quarter of the southeast quarter and the east half of the southwest quarter of the same section. In the year 1920 the parties entered into a contract whereby defendant agreed to convey to plaintiff 1 acre of land with certain water rights, in the northern part of the section, for 5 acres along the west side of the southwest quarter of the southeast quarter of the section. This contract was never performed by the parties because, when they came to fence their respective tracts, they found themselves in disagreement concerning the location of the 5-acre tract and the boundary line which separates their lands in the east half of the sec-

tion. Hence this suit, which involves all of the lands above mentioned. As the pleadings were finally made up, the main issue in the case is in relation to the location of the south quarter corner of the section. The trial court found that the monument which had been set to mark the quarter corner was lost or destroyed, and that said quarter corner was located at a point equidistant between the section corners. The decree in part quiets title in defendant to the 5-acre tract measured from the quarter corner so established. The appeal is by the plaintiff from the part of the decree. The decisive question in the case is whether the evidence supports the findings above mentioned.

There is no substantial conflict in the evidence. The difference between the parties on this appeal is in regard to the findings or conclusions which are to be drawn therefrom. The section was surveyed on August 27, 1869, by one Joseph Gorlinski, a deputy United States surveyor. It appears from a certified copy of the field notes of this survey, which is in evidence, that he commenced at the corner common to sections 13, 14, 23, and 24, which is the southwest corner of section 13, and ran east on a random line between sections 13 and 24; that at 28.00 chains he crossed a gulch which bears northeast and southwest; at 40.00 chains he set a stone for a temporary quarter corner; at 56.50 chains a ravine bears northwest and southwest, enters bench land; at 80.18 chains intersected north and south line of west boundary of township 1 south, range 4 east, 28 links north from the corner to sections 13 and 24, from which corner he ran north 89 degrees 48 minutes west on a true line between sections 13 and 24; at 40.09 chains he set a granite rock 15x8x6 for quarter section corner; and at 80.18 chains the corner to sections 13, 14, 23, and 24. The south boundary line of the section was retraced on October 16, 1894, by one Robert Gorlinski, a deputy United States surveyor, for the purpose of relocating the southwest corner, which he was unable to find and which it was necessary for him to locate in order to survey other lands lying to the west. To

retrace the line, he commenced at the southeast corner of the section, where the monument which had been set in 1869 was in place and properly marked, and ran west on the course and for the distance given in the field notes of the original survey; and at 80.18 chains he established the southwest corner and set a monument, which was standing when this controversy arose. In the field notes of this retracement, a certified copy of which is in evidence, it is recorded that "at 40.09 chains did not find old ¼ sec. corner."

Robert Gorlinski, testifying as a witness for the defendant in this case, also stated that when he retraced the line in 1894, he and the members of his party searched diligently the vicinity of the point 40.09 chains west from the southeast corner, where the field notes of the original survey show the monument for the quarter corner was set, and over a radius of 100, possibly 200 feet therefrom, but they were unable to find anything that resembled a quarter corner monument. He remembered a ridge which comes down across the section line from the south, but did not search on the ridge; his search being down in the brush and aspens east of the ridge.

Alexander Dahl, a brother of the defendant, testified that he had searched for the quarter corner monument but had been unable to find it. His first search was in 1892, when he and his brothers purchased the lands in section 13. In the spring of that year he employed a surveyor named McAllister to help locate his boundary lines; and he and McAllister searched for the corner down in the brush east of the ridge, where McAllister's measurements showed it should be; and while they did not find the stone, they did find a 2x4 stake set in the ground, with a tack in the top of it. This witness also testified that he was with Robert Gorlinski and his party in 1894 and joined in that search, as he wanted to know where the corner was because it was the corner to his land.

Joseph Blinkensdorfer and Norman Paul Stromness, two

mining and civil engineers, were employed by the defendant to do some surveying on the land. Both testified that they searched in 1927 and 1928 along the section line for the quarter monument, but were unable to find anything which they could identify as such.

The plaintiff produced a witness, J. B. Swenson, a mining and civil engineer, who had been employed by plaintiff to survey the 1-acre tract, the 5-acre tract, and to establish the boundary line between the lands of the parties, who testified that he found the quarter corner monument in place on the ridge in 1922. His testimony on the point is that from the southeast corner monument, which he found in place and properly marked, he chained north 80 rods; that it was necessary for him to know the location of the south quarter corner, so that he could run west parallel to the south line of the section, and he mentioned that fact to Mr. Rasmussen, who was with him at the time, and the latter pointed out a post which they could see standing upon the ridge and said: "It is right by that post." Then under Swenson's direction, Rasmussen took a flag and placed it on a stock directly over the monument, which was near the post; and Swenson used that flag point as the south quarter corner in making his measurements and calculations. He discovered that the distance between the south quarter corner and the southeast corner of the section was in excess of ½ mile. He told the defendant, who was with him when they were down near the center of the section, to go up to the quarter corner and take fifty-five steps to the east, and the defendant went up to the pile of rocks on the ridge and stepped off fifty-five steps to the east. The next day Swenson went with a Mr. Jeremy up to where the flag had been placed. There he found the quarter corner monument. It was a limestone, about 6x7x13 inches in size, covered with mountain lichens which were in a state of semipetrification, set on edge in the ground. There was no mark on it to identify it as a survey monument, except a little trace on the north side. It should have been marked with a figure ¼ on the north side. It

was at a point 9 or 10 feet north from a straight line drawn between the section corners and about 2 feet south from a mound of stones which had been placed by hand. The remains of two old fences cornered at the stone, one running west and one running south along the ridge. In 1927 he measured the distance between this stone and the southeast corner of the section, finding it to be 2,741.9 feet, which is 101.9 feet in excess of one-half mile. In 1929 he found the monument broken and the pieces scattered upon the ground and the mound of stones destroyed. The field notes show that Joseph Gorlinski, in making the original survey, crossed a gulch 797.94 feet west from the point at which he says he set the quarter corner monument; and Swenson found a gulch 799 feet west from the stone which he found on the ridge. On the north boundary line of the section, the distance between the northeast corner and the north quarter corner, both monuments of which are in place and properly marked, it is 77.6 feet in excess of one-half mile.

The evidence shows that the fences which were mentioned by Mr. Swenson in his testimony were erected by a man named Tree, sometime about 1894 or 1895, when he took up a homestead entry in the northwest quarter of section 24, which adjoins the Dahl land in section 13. In putting up his fences, Tree commenced somewhere east of the southwest corner of section 13 and ran east to the crest of the ridge, then turned south along the crest of the ridge; and there is a suggestion in the evidence that he turned south along the ridge, instead of going on over the ridge, because of the difficulty which would be involved in building a fence in the rough and brushy land east of the ridge. The land in the northeast quarter of section 24, which adjoins plaintiff's land in section 13, was entered by a man named Anderson and later came into the possession of the defendant and his brothers. In 1902 or 1903 Alexander Dahl, one of defendant's brothers, ran a fence along the south boundary of section 13, from the southeast corner west to where he and McCallister found the 2x4 stake with the tack in the

top, to fence the Dahl land in section 24. There was no fence along the south boundary line of section 13 between that stake and the pile of stones on the ridge. The pile of stones on the ridge was put there by Mr. Tree as a brace for his corner fence post.

Two of the plaintiff's witnesses, Mr. Chris R. Rasmussen and Mr. N. C. Peterson, who had resided for many years in the neghborhood of the land involved in this action, testified that the pile of stones on the ridge was known as a corner stone. Mr. Peterson said he remembered it from the time when he was a small boy and that there were no markings on it to identify it as a corner stone; and he did not remember seeing any other stone nearby. Mr. Rasmussen said he had seen the pile of stones on the ridge, it was in plain view from the road, but he had never been up to it until he went there with Mr. Swenson in 1922; he always considered the pile of stones to be Mr. Tree's corner and the fence running south was on the boundary line between Mr. Tree on the west and Mr. Anderson on the east; he did not think Mr. Tree claimed anything east of the fence.

The ridge which has been mentioned is rather barren of vegetation and is of a sandy shale formation. The land lying east of the ridge along the section line is rough and brushy, which makes it difficult for surveyors to measure distances over it with a chain.

Two of the defendant's surveyors, Blickensdorfer and Stromness, measured the south boundary line of the section with a steel tape, in 1927 and 1928, and checked their measurements by triangulation, with the following results: On the south line of the section between the corner monuments in place, the distance is 5,329.4 feet, which is 94.4 feet in excess of 1 mile; from the southeast corner to the pile of stones on the ridge is 2,737.8 feet, which is 97.8 feet over ½ mile; from the pile of stones on the ridge to the sothwest corner is 2,591.6 feet, which is 48.4 feet short of ½ mile. They also measured the north boundary line of the section, finding the distance from the north quarter corner to the northeast cor-

ner to be 84.3 feet in excess of ½ mile. The defendant also employed a civil engineer named Hubert G. Hall to survey the lands, which he did in 1930. According to his measurements the distance between the section corners on the south boundary line is 5,361 feet, which is 81 feet in excess of 1 mile; on the north boundary line between the section corners is 5,359.8 feet, which is 79.8 feet in excess of 1 mile; and from the north quarter corner to the northeast corner is 2,728.8 feet, which is 88.8 feet in excess of ½ mile.

There is in evidence a certified copy of a map or plat of section 13 which is on file in the United states land office in Salt Lake City which appears to have been made up from the field notes of the original survey. On this map that south quarter corner of the section appears to be located east of hill or ridge which is depicted thereon; and it also appears to be located halfway between the section corners.

The place where Joseph Gorlinski, on August 27, 1869, set a granite stone 15x8x6 inches in size, as a monument to mark the south quarter corner of section 13, township 1 south, range 3 east, Salt Lake Meridian, is in law and in fact the south quarter corner of that section. For the law establishes the corner where the surveyor actually located it upon the ground. *Immon et ux.* v. *Pearson et al.*, 47 Wash. 402, 92 P. 279; *Hale* v. *Ball*, 70 Wash. 435, 126 P. 942; *Moyer* v. *Langton*, 37 Utah 9, 106 P. 508; *Washington Rock Co.* v. *Young*, 29 Utah 108, 80 P. 382, 110 Am. St. Rep. 666.

If that monument were found in place, it would afford the best and most satisfactory kind of evidence as to the location of the quarter corner. In fact, it would be conclusive of the matter. 9 C. J. 164, § 18. It is apparent from a reading of his testimony as the same is contained in the bill of exceptions that the Surveyor Swenson, upon whom appellant mainly relies, sincerely believed that he found that monument in place upon the ridge. But we do not feel satisfied from a reading of all the evidence in the case that his belief was well founded. He must have been

mistaken in supposing that the rock which he found and described was in fact the rock set by Joseph Gorlinski fifty-three years' before. Mr. Swenson himself testified that the stone which he found bore no marks from which he could identify it as a survey monument; and that it should have been marked with the figure $\frac{1}{4}$ on the north side. In the field notes Joseph Gorlinski does not say whether or not he marked the granite stone which he set for the quarter corner; but it was his duty to mark it and we may presume that he did so. The stone which Swenson found was not on a straight line between the section corners, where it would have been if it were the original marker; it was not of the kind described in the field notes, and by Swenson's measurements it was 95.5 feet west from where Joseph Gorlinski in the field notes says he set the quarter corner monument. According to the measurements made by defendant's surveyors, it was somewhat farther than that from the point given in the field notes. Mr. Swenson relied largely upon what Mr. Rasmussen told him about the quarter corner being up on the ridge. But it appears from his cross-examination that Mr. Rasmussen did not know much of anything of value about the quarter corner. All he did know was that he saw the fences and the pile of stones on the ridge and he assumed the pile of stones marked the corner of Tree's land. He said the pile of stones on the ridge was known as a government corner, but he did not say who knew that fact nor how the knowledge was obtained. Hearsay evidence is admissible in a case of this kind to prove the location of a corner or of a boundary line. *Inmon* v. *Pearson*, supra. But it does not appear that Rasmussen knew the location of the corner from what any one told him about it. Mr. Peterson's testimony is of the same character; but it goes farther and bears directly against the contention of the plaintiff, because he said he did not remember seeing any other stone near by when he herded cows up there as a small boy. The evidence does not show that Joseph Gorlinski placed the mound of stones on the ridge to mark the quarter

corner, or that the mound was placed there by anyone as a survey monument; but it does show that it was placed there as a brace for the corner post. Robert Gorlinski was a disinterested witness. When he retraced the line in 1894, he was engaged in business pertaining to his employment by the govment. It hardly seems probable that he and the members of his party would have missed seeing it, if there had been a stone on the ridge or anywhere else along the section line which resembled a quarter corner monument; for they were engaged in a search for that very thing. It is true he testified that he did not search for it on the ridge. But he and his party followed the line clear through, from one corner to the other, so they must have crossed the ridge within a few feet of the spot where Swenson found the stone which he described. Then we have the testimony of Alexander Dahl which cannot be disregarded. It is true that he is an interested witness; but we perceive no sufficient ground upon which to question his credibility. He searched for the quarter corner stone as early as 1892, he was with Robert Gorlinski and joined in the search which the latter made in 1894, and he testified that he had been searching for it ever since, as you might say. In view of all the evidence, we do not feel satisfied to say that the stone which Mr. Swenson found on the ridge is in fact the quarter corner monument. We thing, rather, that the trial court was correct in finding that the quarter corner monument is lost; and so we approve that finding.

The appellant says there are several facts shown in evidence in this case, anyone of which is sufficient to require a finding that the quarter corner was established on the ridge by the original survey; and hence the trial court was in error in finding that the corner is lost. These are the mound of stones on the ridge; the fact that people residing in the neighborhood had always regarded the mound as being the quarter corner; the remains of the two old fences converging at that point; the fact that there is an excess of about 84 feet in the east half

of the section on the north end; and the fact that, according to Mr. Swenson's measurement, the mound on the ridge is within 1.6 feet of the distance given in the field notes as the distance between the quarter corner and the gulch on the west. This proposition, however, cannot be sustained. There are fatal objections to each fact upon which appellant relies. The mound of stones in and of itself does not prove anything; it does not show that it was placed there by any one to bear witness to the quarter corner; there are, or were, no markings upon it to identify it as a surveyor's monument; and there is no evidence, either in the field notes, or otherwise, aside from the testimony of Mr. Rasmussen and Mr. Peterson, to connect the mound in any way with the original survey of the land or to show that it was placed there by any one to show where a quarter corner monument once stood or a quarter corner had once been established. As to the testimony of Mr. Rasmussen and Mr. Peterson, we have stated in another connection that it has little or no value because they really did not know anything abount the matter except that they saw the mound on the ridge and they assumed that it was a quarter corner or the corner of Mr. Tree's land. The fences were not built by adjoining owners; they were built by Mr. Tree. There is no evidence to show that at the time the fences were built the quarter corner monument was in existence; but there is direct evidence from which no other inference can be drawn than that there was no quarter corner monument in existence at the time the fences were built. This section is more than 1 mile wide both on the north and on the south boundary lines. The appellant's theory is that Joseph Gorlinski, who made the original survey and established the corners and quarter corners, threw all of the excess into the east half of the section. This is shown, he argues, by the fact that distance from the northeast corner to the north quarter corner is 84 feet in excess of ½ mile, while the distance from the southeast corner to the south quarter corner on the ridge is about 97 feet in excess of ½ mile;

the difference being attributed to the difficulties in chaining accurately over uneven and brushy ground. This theory, however, is not tenable in view of the evidence contained in the field notes. The field notes show that Joseph Gorlinski found an excess of .18 of a chain, or 11.88 feet, over 1 mile in the distance between the section corners on the north and south lines and that he intended to divide this excess equally between the two halves of the section; that Joseph Gorlinski was accounting for an excess of 11.88 feet and dividing it equally between the two halves, not that he was accounting for about 84 feet or 97 feet and throwing all of it into the east half. It is inferable from the data contained in the field notes that Joseph Gorlinski set the quarter corner monument at a point 797.94 feet east of the gulch which he crossed as he ran east on a random line from the southwest corner; and Mr. Swenson measured the distance from a gulch which he found on the west to the mound of stones on the ridge, finding it to be 799 feet, which is within 1.06 feet of the distance given in the field notes. This is some evidence to support the claim that the quarter corner was established on the ridge, for the gulch is a natural monument to which the corner is tied. But there is other evidence of equal weight, if not of greater weight, to offset it. The quarter corner is tied in the field notes to the southeast corner and the monument which Joseph Gorlinski set at the southeast corner is in place and has never been disturbed. The quarter corner is also tied to the southwest corner, and, while the monument which he set at that point has been obliterated, the corner has been reestablished by a deputy United States surveyor and the monument which he set there is still in place and must be acepted as marking the true corner. The field notes give the distance from each of these corners to the quarter corner as 2,645.94 feet; and it is manifest that, if the field notes speak the truth in this respect, then they are wrong in regard to the distance from the gulch to the quarter corner; and, if they speak the truth in regard to the distance from

the gulch to the quarter corner, then they are wrong in regard to all the other distances contained therein. In view of all these discrepancies and uncertainties, we do not see how it is possible for any one to say with any degree of satisfaction that there is any evidence in this record to show just where Joseph Gorlinski did establish the south quarter corner of the section. If the court were at liberty to discard some of the facts and retain others, it would be possible in that manner to find evidence in the case to show (1) that Joseph Gorlinski established the south quarter corner on the ridge; (2) that he established it 2,645.94 feet west from the southeast corner; and (3) that he established it 2,645.94 feet east from the southwest corner. But when we consider all the evidence, as, of course, we are obliged to do, it is impossible to say where the quarter corner was established; for every fact pointing to one place is offset by another fact pointing to another place.

It is impossible to identify the place where the quarter corner was established by commencing at the southeast corner monument, which is in place, and following through to the southwest corner, on the course given in the field notes, because the surveyors who have measured the distance between the corners, since the southwest corner was reestablished in 1894, find it to be greater than the distance given in the field notes between those points. According to the testimony of the surveyors who measured that distance for the defendant, there is a greater excess to be accounted for in the field notes. This is a rule sometimes invoked for locating lost quarter corners; but it is one which manifestly cannot be used in a case where the section corners are in place and the distance between the monuments on the ground does not correspond with the distance given in the field notes.

Where, as in this case, there is a surplus of land in the section over the amount shown by the field notes, where the quarter corner monument has become lost or destroyed, and where there is no satisfactory evidence to show or from

which it can be determined where the quarter corner was established by the original survey, the courts, ■ presuming that whatever causes contributed to the mistake or error in the original survey operated equally on all parts thereof, will divide the surplus proportionately among all the legal subdivisions of the section bordering upon the line. *Galbraith* v. *Parker*, 17 Ariz. 369, 153 P. 283. To divide the surplus in section 13 proportionately among the legal subdivisions bordering upon the south boundary line, requires that the south quarter corner be established at a point half way between the section corner monuments. The undisputed facts in this case, aided by the presumption above mentioned, afford sufficient evidence to support the finding of the trial court that the south quarter corner was established by the original survey at a point equidistant between the section corners. That finding is therefore approved.

That part of the judgment from which the appeal is taken is therefore affirmed. The appellant to pay the costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.