293 P.2d 674

Ella H. PERKINS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Family Service of Phœnix, Respondents.

No. 6004.

Supreme Court of Arizona.

Feb. 21, 1956.

Lewis, Roca, Scoville & Beauchamp, Phoenix, for petitioner.

Robert K. Park, Phoenix, for respondent Industrial Commission of Arizona, John R. Franks, Donald J. Morgan, and John F. Mills, Phoenix, of counsel.

WINDES, Justice.

Certiorari to the Industrial Commission of Arizona. Petitioner Ella H. Perkins sustained injuries arising out of and in the course of her employment on May 4, 1952, as a result of a collision involving an automobile in which she was a passenger. The impact caused the death of one person in petitioner's car and another passenger was severely injured. Petitioner sustained a cerebral concussion and was unconscious for approximately four hours following the collision. Her eye glasses were broken causing laceration downward from the corner of the right eye and resulting eventually in a one-inch scar. Petitioner was given emergency treatment at Memorial Hospital and thereafter was treated by Dr. Lee Ehrlich who filed attending physician's report with the commission as follows:

"Laceration lateral aspect right periorbital region and multiple contusions, Cerebral Concussion."

Petitioner made application to the commission for benefits under the workmen's compensation act of Arizona. On March 5, 1953, the commission made findings and award that petitioner was entitled to accident benefits, was not entitled to compensation and had no physical disability resulting from the accident. Petitioner protested this award on the basis of the occurrence of a lump in the scar and the award was rescinded. After further medical examination of petitioner, the commission on August 5, 1953, again entered its findings and award for accident benefits which award became final.

On November 27, 1953, petitioner filed application to reopen her claim on the ground that examination of her eyes after the time of the final award showed that cataracts had developed which were the result of the injury sustained on May 4, 1952. This application was supported by a letter from Dr. Paul H. Case reciting that petitioner had cataracts present in each eye and it was his view they were caused by the accident. Pursuant to the suggestion of Dr. James R. Moore, its medical advisor, the commission appointed a board of three specialists, Dr. Case, Dr. Paul E. McFarland and Dr. H. J. French, to examine petitioner. Drs. Case and McFarland reported that in their opinion the cataracts were caused by the accident. Dr. French rendered a contrary report. Thereafter, the commission pursuant to the advice of its medical advisory board appointed another board to clarify the discrepancies in the opinions of the members of the first board. This second board consisted of Dr. R. L. Melton and Dr. O. W. Thoeny. These latter doctors reported that in their opinion

the cataracts were not due to the accident. On the basis of these reports the commission denied the application to reopen the claim. On application for rehearing, formal hearing was had and the commission on September 24, 1954, entered an award affirming its denial to reopen the claim. From this award the petitioner brings certiorari.

The sole question presented is whether there is any substantial evidence to support the commission's finding that the present condition of petitioner's eyes, which is undisputed, is not attributable to the injury sustained by her on May 4, 1952.

The report of Drs. Case and McFarland recites as follows:

"It is our opinion that the cataracts were caused by the injury in May of 1952. The opinion is based upon the fact that the vision became blurred immediately after the accident. She must have had an accident of great force as evidenced by the fact that another occupant in the car was killed instantly. Also, our opinion is based on the fact that she has had by Dr. Ehrlich a very careful study of her general condition for a possible toxic condition or other conditions in her system which might account for the lens opacities. Nothing was found in her general condition to account for cataracts.

"We realize this is not a true traumatic cataract insofar as there is a direct trauma to the eyes but feel that due to the shakeup of the severe blow that there was a disturbance indirectly to the eyes causing a disturbed metabolism which resulted in her cataracts." The minority report of Dr. French states:

"Comment; The point is whether or not the injury Mrs. Perkins suffered is responsible for her lens pathology. In contusion cataracts there always remains tell-tale evidence long after the injury, for example:

"(1) Alterations of the pupil or iris, as (a) Traumatic mydriasis, (b) Rupture of the iris sphincter, or (c) Rupture of the Root of the iris (iridodialysis).

"(2) Vossius' ring shaped lens opacity on the anterior capsule,

"(3) Dislocation of the lens,

"(4) Rupture of the choriod

"(5) Commotio retinae, with resultant traumatic macular hole,

"(6) Posterior rosette shaped cataract along the lines of the posterior sutures, with a feathery star-shaped pattern.

"I failed to find any of the above pathology in this patient's case, instead her cataracts are of a uniform spongy type and do not spread axially, rather are saucer shaped. The vitreous shows definite signs of being diseased which in my opinion is responsible for her lens changes and not trauma."

Drs. Melton and Thoeny in a joint report stated:

"Examination of her eyes shows a posterior capsular cataract on each eye.

These cataracts though do not have the appearance of traumatic or contusion cataracts. They are not rosette or stellate in shape as is typical of traumatic cataracts. Then again it is customary for a traumatic cataract to affect only one eye, whereas her cataracts are bilateral as is usually the case in cataracts coming on from other causes. Traumatic cataracts also usually show some of the following classical signs such as; alteration of the pupil, traumatic mydriasis, rupture of iris, iridodialysis, Vossius Ring, dislocation of subluxation of the lens, and commtio retina. Mrs. Perkins eyes show none of these signs.

"Slip lamp examination of her eyes shows that there are a large number of cells in the anterior one-third of the vitreous. Such an abnormal condition of the vitreous interferes with the nutrition of the lens and tends to cause cataracts."

This report also indicates that it was influenced to a certain extent by the assumption the patient did not notice blurring of vision until about fourteen months after the accident. It was stated in the report that "according to the * * * leading authorities on cataracts a traumatic cataract comes on in a few days or a week or not over three months after the accident". The petitioner testified that she first experience blurred vision about seven months after the accident. All the aforementioned doctors except Dr. McFarland testified on the rehearing and rendered in substance the same opinions given in their reports.

Petitioner's contention is that the opinions that the cataracts were not caused by the accident contain no evidentiary value and carry no weight because they are based upon erroneous facts and were made without considering all of the facts. The doctors who testified giving opinions in harmony with the award were given all the facts either by the petitioner, by the records of the commission or by counsel's hypothetical questions. Each of them made a detailed physical examination, as did the two doctors who gave contrary opinions. Dr. French made the same examination as Drs. Case and McFarland. He stated in his report that when there was an injury which would produce cataracts, there was discoverable telltale evidence and that from his examination he discovered none. He stated the nature of the cataracts showed definite signs of disease which in his opinion was the cause rather than springing from trauma. One of the bases of Dr. Case's opinion was that the patient undoubtedly received a severe blow on the head; that such a blow could alter the nutrition to the eye and result in bilateral cataracts. Dr. French, while admitting that no doubt an alteration of nutrition could cause cataracts, stated that, if such an injury had occurred, there would be evidence thereof. He said:

"You see, there isn't anything there to—the tell-tale evidence. Even long

after the injury you have tell-tale evidence, and there isn't any in hers. And it is all of a pathological change in the back part."

This doctor further testified:

"Q. Well, damage to the blood vessels of the head, brain or the eye sockets produce, not a failure, but an alteration of the nutrition? A. With the absence of the other findings, I would say in her case it hasn't done it.

"Q. But I say, could it? A. Well, I would have to know more about it and so forth, and it is theoretically possible but not practical, see."

Another basis for Dr. Case's opinion was that he had Dr. Ehrlich examine the patient to see if he could discover any systemic cause for the cataracts. Apparently, not being able to find another cause, Dr. Case by process of elimination concluded the cause to be the accident. Dr. French had this elimination report but did not agree with Dr. Case's and Dr. McFarland's opinion. It is clear that these three doctors had the same information and facts but merely came to opposite medical conclusions.

Petitioner says that Dr. Melton's entire opinion is based upon the assumption that bilateral cataracts could not be caused by trauma or concussion. This is not a correct statement. Dr. Melton testified that in his opinion bilateral condition is not caused by concussion. In his and Dr. Thoeny's report other bases for their opinion were given, i. e., that they did not have the

appearance of trauma or contusion cataracts; that such cataracts usually show certain signs; and that the patient's eyes showed none.

■■■ We fail to perceive how it can be contended that the commission had no legitimate opinion evidence to the effect that the petitioner's condition was not caused by the accident. Causal connection between the accident and the ailment of petitioner must necessarily be determined upon expert medical opinion. When there is a conflict in the opinions of reputable doctors, this court cannot disturb the finding of the commission. Sarakoff v. Six Companies, Inc., 48 Ariz. 99, 59 P.2d 302; Ison v. Western Vegetable Distributors, 48 Ariz. 104, 59 P. 2d 649.

Petitioner contends that this court's decision in Jenkins v. Industrial Commission, 77 Ariz. 377, 272 P.2d 601, wherein the commission's award based upon purported medical testimony was set aside, would require a like decision in this case. The two cases are not similar. In the Jenkins case we refused to allow the commission to use as evidence contradictory medical opinion or opinions which refused to accept established facts and which were not based on material facts which should have been considered. No such conditions exist herein.

The award is affirmed.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concurring.