308 P.2d 698

Harold S. SMITH, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, and Valley Sales and Service, Inc., Defendant Employer, Respondents.

No. 6231.

Supreme Court of Arizona.

March 26, 1957.

Wade Church, Phoenix, for petitioner.

John R. Franks, Phoenix, for respondent Industrial Commission of Arizona. Donald J. Morgan, Robert K. Park and James D. Lester, Phoenix, of counsel.

UDALL, Chief Justice.

Certiorari to respondent Industrial Commission of Arizona to test the validity of a final award of the commission denying compensation to petitioner, Harold S. Smith, a 61-year-old electrician by trade.

Petitioner was an employee of Valley Sales & Service, Inc., respondent employer. On Thursday, April 14, 1955, an incident allegedly occurred at a job site north of Scottsdale where a work crew, which included the petitioner was engaged in laying conduit pipes. It is alleged that a portion of the trench bank caved in, causing dirt to fall on and around the petitioner, which, he contends, resulted in permanent compensable injury to his right eye and, thus, constituted an accident arising out of and in the course of his employment.

Admittedly it was very windy that Thursday with much dust in the air. Petitioner's fellow workmen corroborated his testimony that from the cave-in "he got dirt in his eyes" which caused him some annoyance and inconvenience, and at that time he remarked to them his eyes were bothering him. However, it was not until Sunday, April 17, that petitioner went to his family physician, Dr. Louis Katz, complaining of an eye difficulty. The history given Dr. Katz was "that some dirt was blown in his eye or fell in his eye", no mention being made of trauma. The doctor prescribed some eye drops but, not being a specialist, referred him to Dr. McFarland for further examination. The latter's written report to the commission, dated April 25, made a diagnosis of a "retinal detachment in the

right eye" and suggested consultation with other eye specialists to check his diagnosis.

In the meantime petitioner filed with the commission a report of the alleged injury and therein made application for benefits under the provisions of the workmen's compensation law. The employer was insured with the State fund. The commission assumed jurisdiction, had an investigation made of the claimed injury, and appointed a panel of three eye specialists, consisting of Doctors McFarland, French, and Aiello, to examine petitioner. Such examination was promptly made and a report filed with the commission on May 17. After receiving such report, the commission made findings and award for noncompensable claim. Thereafter, petition for rehearing was granted and full scale hearings were held at which all four doctors, heretofore named, testified, along with other witnesses called by petitioner. On December 14th the commission made its decision upon rehearing and entered an order affirming its previous award that petitioner take nothing.

In reaching its conclusion that it was a noncompensable claim the commission made three pertinent findings, viz.:

"2. The applicant did not suffer any blow upon the head or eye as he alleged on April 14, 1955, nor at any time in the employ of the employer, sufficient to disable or injure him or his eye; that he may have gotten dust in his eyes on said date, but such incident neither caused nor aggravated the condition of his right eye as claimed.

"3. That although applicant has substantially lost the sight of his right eye, the incident or incidents relied on were coincidental, and his disability and disease to the said eye were conditions of long standing, and not proximately related to or aggravated by any incidents or accidents while in the employ of defendant employer.

"4. That applicant's detached retina came about through causes unconnected with and not arising out of nor in the course of his employment by defendant employer."

Petitioner's two assignments of error, in effect, challenge these findings on the ground that same are contrary to, and not supported by the evidence, it being affirmatively claimed that if the evidence were viewed by the commission according to established rules, the only conclusion that could be reached was that the petitioner did sustain an injury by accident arising out of and in the course of his employment.

It is conceded that trauma is a common cause of a detached retina. We have examined the record to determine whether there is any basis in fact to compel an overthrow of the commission's finding that petitioner did not suffer any blow upon the head or eye on April 14th. It reveals

that two doctors who first treated him were in agreement there was no evidence of external injury. Petitioner's strongest showing of trauma lies in his contention that one Bernie Garduno fell in the ditch with the cave-in, the theory being *he could have been struck* by Garduno or by a pipe Garduno carried. It is questionable, however, whether the latter did fall, for in a written report given shortly after the accident he stated he could not recall such incident. Nevertheless, before the referee he did remember the fall, but neither he nor claimant would positively state petitioner received a blow therefrom. At best all the evidence only suggests a possibility of trauma. It is fundamental that the burden of proving his claim rests upon petitioner and the commission as trier of facts is not required to disprove it. Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286; Martin v. Industrial Commission, 75 Ariz. 403, 257 P. 2d 596.

Next, petitioner's claim that the detached retina was causally related to, or contributed to, by the alleged personal injury from the accident occurring in the trench on April 14th raises a question that could only be resolved by the commission after the hearing of expert medical testimony. Perkins v. Industrial Commission, 80 Ariz. 119, 293 P.2d 674. The panel of experts were in complete agreement on their report, the concluding paragraph of which reads:

"Opinion: It is the opinion of the consultants that the retinal detachment, which is present in the right eye, is coincidental to the alleged injury—that of getting dust in the right eye. The history of having been struck by a fellow workman is very vague and it is the feeling that if the detachment had resulted from a blow it would have been sufficiently strong enough to enable the patient to give a more accurate history regarding this injury. In view of the fact that there has been considerable pathology existing in both eyes since early childhood, we do not feel that the detachment is a result of the injury but rather a part of the degenerative pathology existing in the eyes. The consultants also feel that the chances of a good result following surgery are very poor. This consultation is based on the fact that there is now present nystagmun associated with a dense vitreous haze and corneal scarring."

■ We feel no good purpose would be served by setting forth excerpts from the oral testimony given by these doctors at the subsequent hearings. Suffice it to say that all of them adhered to the above-quoted opinion. A fair summary of all the medical evidence is that petitioner had a diseased eye condition of long standing. Disease was present in the form of a luetic condition. The results of degenerative processes

were apparent. The medical opinion expressed is unequivocal in relating the degenerative process as being the cause of the detached retina as opposed to petitioner's theory—which, as pointed out above, is without probative evidence to support it —that there was trauma in the form of a blow to the head or eye.

On this over-all state of the record there certainly would be no justification for our saying the evidence was such as to compel the commission to award petitioner compensation. Cf. Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710.

Award affirmed.

WINDES, PHELPS, STRUCKMEYER and LA PRADE, JJ., concur.